CASE 35—INDICTMENT—FEBRUARY 28.

# Philips vs. Commonwealth.

### APPEAL FROM MERCER CIRCUIT COURT.

1. In testing instructions given on a trial for murder, every deduction which the jury might have been authorized to make from the testimony, must be assumed as a fact proved.

2. See the opinion for a statement of the facts upon which it is held erroneous to instruct the jury that they ought to find the accused guilty of murder, unless they should also be of opinion that he, when he fired the pistol, had reasonable ground to believe, and did believe, in good faith, that the deceased was then about to carry his previous threats into execution, and would do so unless prevented by killing him, and that the accused had no other means of escape.

3. The principle applicable to a mutual rencounter, or an affray with deadly weapons, does not apply to a case in which the first escape from threatened assassination by a determined and persevering enemy would not probably secure the ultimate safety of the accused. (2 *Stark. on Ev., p.* 523.) The party once assailed by an enemy who had threatened to kill him, is not bound to run and thereby escape *that* assault, leaving the danger still impending, and, perhaps, increased by the act of running.

HOOE & GAITHER, for appellant, cited 4 *Bl. Comm.*, 184; 2 *Kent's Comm.*, 15; 7 *J. J. M.*, 484; 1 *Hawk. Pl. Cr. Ch.*, 28, *sec.* 21; *Foster on Hom.*, 273, 274; 14 *B. Mon.*, 622.

HUNT, BECK & CLARK, on same side, cited 15 *B. Mon.*, 546; 1 *Met.*, 379; 18 *B. Mon.*, 53; 2 *Starkie on Ev.*, 523.

C. A. HARDIN, on same side, cited 18 *B. Mon.*, 53.

JOHN M. HARLAN, Attorney General, for the Commonwealth, cited *Civil Code, sec.* 334; 14 *B. Mon.*, 622.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Convicted and sentenced to be hung for killing, by pistol shots, his neighbor and wife's cousin, *Madison Miller*, the appellant, *Richard Philips*, appeals to this court for a reversal of the judgment, because, as he says, he had not a fair trial— the jury being confused and misled by instructions both bewildering and erroneous.

In testing the instructions, every deduction which the jury might have been authorized to make from the testimony,

must be assumed as a fact proved. Tried by this rule, the following facts characterize the case, as exhibited in the record—

1. About four weeks before the homicide, Miller, armed with a pistol, went to a field, where the appellant and others were working, avowing his purpose to chastise a white boy then and there in the employment, and confided by his father to the care and protection, of the appellant; and the required surrender of the boy being refused, *Miller*, in a violent rage, pointing his pistol at the appellant, threatened to shoot him, and being, probably, prevented by the presence of others, cursed and denounced him, and asseverated that, wherever he might see him again, he would shoot him.

2. The threat was afterwards; more than once, repeated to other persons, and *Miller* was once seen watching for the appellant, on the road he was expected daily to travel, and avowed his purpose to kill him.

3. Miller was a man of strong passions, unrelenting in resentment, and rather peculiarly bold, reckless, and inflexible in the execution of his avowed purposes.

4. On the day of the homicide the appellant, on horseback, going with his wife and brother to his field with a scythe and cradle on his shoulder, met *Miller* unexpectedly, and, inquiring of him whether he intended then to execute his threat, *Miller* answered that he did, and put his hand in his pocket, indicating an intention to draw his pistol. Whereupon, the appellant charged on him and shot him several times until he was, apparently, dead. A rather feeble-minded boy, who was with the appellant and his wife and brother, at the time of that fatal meeting, testifies to that conversation and demonstration, as the only witness, the wife being incompetent, and the brother being incapacitated by the joint indictment against the appellant and himself, without any apparent or presumable reason for joining him, unless the object was to deprive the appellant of his testimony. And, although the only remaining witness of the conversation was much confused by severe cross-examination, the jury had a right to

believe him, and such belief was, therefore, hypothetically assumed in some of the instructions.

On these facts the circuit court gave several instructions, rather too multifarious to be certainly understood and rightly applied by the jury, and refused some others asked by the appellant's counsel.

In two of the instructions, as given, the court told the jury that, if they should believe the substance of the foregoing facts, they ought, nevertheless, to find the appellant guilty of murder, unless they should also be of the opinion that he, when " he fired the first shot, had reasonable ground to believe, and did, in good faith, believe that *Miller* was then about to carry (his) threats into execution, and would do so unless prevented by killing him (*Miller*), *and that he* (appellant) *had no other apparent means of escape.*"

The principle assumed in these instructions, as to the duty of escaping, we cannot recognize as either safe, sound, or maintainable as the law of the land. The principle applicable to a mutual rencounter, or an affray with deadly weapons, does not equally apply to such a case as this, in which the first escape from threatened assassination by a determined and persevering enemy might not, and probably would not, secure the ultimate safety of the doomed victim. The law of self-defense is, in such a case, more comprehensive, conservative, and assuring. *Mr. Starkie,* in his 2d volume on Evidence (*side page* 523), says: " The accused may also show in justification that he committed the act in self-defense. If A *manifestly* intends to commit a felony on the property or person of B, by violence or surprise, B is not obliged to retreat, but may pursue his adversary till he find himself out of danger; and if, in the conflict, A happeneth to die, such killing is justifiable; but, in the case of mutual conflict, the party, to excuse himself, must show that he retreated as far as he could before he gave the mortal stroke, and that he killed his adversary through mere necessity to avoid immediate death."

This is British law. Why, when properly understood and applied, should it not be, in principle (without now defining the extent of its application), American law? And if the

principle illustrated in the first part of the extract be sound, must it not be pre-eminently applicable to *continual* danger to life, reasonably and actually apprehended from persistent threats?

In such a case, an escape from immediate danger is only momentary, and may be no escape from the danger still impending, and perhaps increased; because running once may induce the assailant to believe that the assailed will never stand and manfully defend himself, and thus embolden him to renew his attacks without apprehension of any resistance perilous to himself. If the party once assailed by an enemy who had threatened to kill him is bound by law to run if he can thereby escape *that* assault, legal self-defense may become a mockery and the sacred right itself a shadow. Like the sword of *Damocles*, the threatened danger is continually impending every moment and everywhere. The threatened man may be waylaid or otherwise attacked unawares, without the possibility of defense or of escape, and may never, day or night, feel safe, or actually be so, while his enemy lives, who, whenever he may see him, or wherever he can *find* him, may be anxious and able to kill him. And does either human or divine law require such prolonged agony and peril? Or can the best and most prudent men suicidally forbear to strike for riddance if they have the courage to defend themselves *in the only way of secure and lasting escape? Starkie* says no, and we too say no. Whether, *in such a case*, the threatened man, anticipating the attack, may always hunt his enemy and kill him in self-defense, we do not mean to intimate. It is sufficient for this case to decide, that, if the appellant had reason to apprehend and did apprehend that *Miller* would shoot him unless he could run away, or shoot *Miller* first, the law does not require him to run and be shot, perhaps, in the back, or afterwards secretly assassinated, but justified his taking *Miller's* life. And if he believed that *Miller* was drawing out a pistol to shoot him, the fact afterwards developed that *Miller* had *then* no pistol, but was only manœuvering to make him run, cannot make him culpable for doing what he had good reason to believe was necessary for either the immediate or ultimate security of his life.

It is evident that the appellant had not been seeking, but rather eluding, *Miller*, whose vindictive passion and bloody purpose seem to have been not only unjustifiable but causeless. Did the public interest or the reason of the law require the appellant to continue to skulk and endure the agony of impending death as long as *Miller* might seek his life? This cannot be. Then why, if the testimony be true, was it his duty, when he met *Miller*, ignominiously to flee and thereby prolong and increase his peril? This was not the way to save himself or to "*escape*" being shot in the dark, at home or abroad, by stealth or surprise, when self-defense would be impossible. And unless he could, by running, have escaped all these continually impending perils, why should the law require him to run? Regard for his own life would not allow it, and, as a proper man and prudent citizen, he was not bound to do it. And the example of such humiliating and imperiling recreance would do more harm than good to the public security and peace.

We are of the opinion, therefore, that, as herein before indicated, the circuit court radically erred.

Wherefore, the judgment of conviction is reversed, and the cause remanded for a new trial, when, if the appellant be guilty, he may be punished justly, according to the laws of his country.