JUDGE ROBERTSON
delivered the opinion of the court (Judges Hardin and Peters delivering separate opinions, qualifying concurrence and dissenting in part.)
The appellant, John W. Carico, a young physician, residing in tbe village of Fredericksburg, Washington County, Ky., *126 indicted for murder in killing his neighbor, David Smith, “by shooting him with a gun,” was found guilty by a jury and sentenced to confinement in the penitentiary for six years. He urges a reversal of the judgment for alleged error in instructions, and in the exclusion of testimony by the circuit court on the trial. The appellant attempted to excuse the homicide by the proof of circumstances conducing to show that Smith without any reasonable cause became extremely hostile to him; assaulted him more than once with deadly weapons; frequently declared that he would kill him; and the evening before the catastrophe said that he would kill him before the next night. About four o’clock in the morning succeeding that last threat Smith, after passing the appellant’s office on his way to his own stable, apparently for the purpose of feeding his horse, was shot in the back and killed by the appellant without any apparent demonstration of an immediate assault on the appellant, and without seeing him. The testimony marks Smith as a man of violent passions and inflexible will, and characterizes the appellant as a moral, quiet, and prudent gentleman in his antecedent behavior.
The shooting being before the dawn of day, the jury might possibly have inferred, from the unusual time and all the other facts, that Smith’s purpose in being out so early was to reconnoiter for a secret chance to assassinate the accused before he was up in his office, and that the latter was so prematurely ready with his loaded musket only to meet such a night attack, and that seeing Smith he apprehended his speedy return to execute his threats.
On these facts the circuit judge by his rulings adjudged that whatever deductions the jury might make from the evidence, and however assured the appellant may have felt that his life was in immediate and continual danger, nevertheless he had no right to shoot as and when he did unless there was then imminent danger of an immediate and violent asssult on *127 him by Smith. This insured the verdict and sealed the appellant’s doom; and whether that decision was right or wrong is the ruling question on this appeal.
This case is an episode to that of Phillips v. The Commonwealth, 2 Duvall, 328, in which this court adjudged the philosophy of the law of self-defense, which we still approve and now reaffirm. In that case we could not judicially extend the principle therein defined and recognized to a homicide exactly like this; and therefore we expressly forbear even an intimation of an opinion as to such extension. The application of the principle is a difficult task for a jury, and is peculiarly hazardous. But its liability to perversion or abuse by juries can not curtail the principle itself as a law for the court.
Speaking of assured and continual danger to life, this court, in the case in 2 Duvall, defined the principle of self-defense as follows: “ Like the sword of Damocles, the threatened danger is continually impending every moment and everywhere. The threatened man may be waylaid or otherwise attacked unawares without the possibility of defense or of escape, and may never, day or night, feel safe, or actually be so, while his enemy lives, who whenever he may see him or wherever he may find him may be anxious and able to kill him. And does either human or divine law require such prolonged agony and peril; or can the best and most prudent men suicidably forbear to strike for riddance, if they have the courage to defend themselves, in the only way of secure and lasting escape?”
Now if a man feels sure that his life is in continual danger, and that to take the life of his menacing enemy is his only safe security, does not the rationale of the principle as thus defined allow him to kill that enemy whenever and wherever he gives him a chance and there is no sign of relenting? But before a jury should acquit they should be well satisfied that the killing was not the offspring of bad,passion, but solely of a thorough and well-founded belief that it was necessary for security. And here *128 lies the danger of misapplication. It is difficult to be assured that the act was thus necessary and done in good faith. Of that, however, the jury and not the court must judge; and in that judgment they can not be too self-poised and careful before they conclude that the peril of the accused was imminent and incessant, and that he, well assured of it, honestly believed that his only safe remedy was to destroy the power to execute the threats. And if he was authorized to believe and did considerately apprehend that his own exile or the death of his persevering enemy, watching to kill him, was, like the tabula in naufragio, the only safe mode of rescue, might he not lawfully choose his remedy and throw his enemy overboard ? "Why should he be required still to wait an assault and to endure longer haunting and hazard when he might at any moment become the victim of his own forbearance, and when self-defense might be impossible or unavailing? Why let the sword still hang over him? Why not remove it out of sight when he may, and not passively linger until it unexpectedly falls and strikes his heart unresisted ? The recognition of the perfect right to do so in such a crisis appears to us consistent with both principle and policy. It seems to us conservative. It might afford more security and prevent more assassinations than the lame law of punishment ever could, and the manly and opportune assertion of this universal birthright may teach the reckless who thus maliciously beset the pathway of the peaceable that they will be likely to bring destruction on their own heads. This preventive principle will go hand in hand with civilization and philosophical jurisprudence as a palladium of personal security and social order and peace. Properly guarded, it may do more good than harm.
Whether this case comes within the range of that principle we have no right to say. But assuming, as the circuit court ought to have done, everything which the facts conduced to prove, that court ought not to have denied their right, on their *129 own peculiar responsibility, to acquit the appellant on their own construction of the evidence and rational deductions, as hypothetically assumed in some of the overruled instructions. Consequently, if we are right, the circuit court was wrong, and erred in rendering judgment on the verdict.
But there is a minor error which might alone justify a reversal. The appellant offered to prove that a man named Offert, then dead, had but a short time before the homicide told him that Smith had armed himself with a shot-gun to kill him.
The circuit court adjudged this inadmissible, as hearsay. What Offert said was not legal evidence of Smith’s arming himself to kill appellant; but it was competent to prove that the appellant had so heard and may have had a right so to believe, and to that extent and' for that purpose it was admissible. (1 Greenleaf, secs. 100 and 101.)
. For the foregoing causes the judgment of conviction is reversed, and the cause remanded for a new trial conformable with the principles of this opinion.