JOSEPH FRAZIER *v.* COMMONWEALTH.

**Criminal Law—Homicide—Instructions—Malice Aforethought.**
> An intentional killing does not necessarily imply the crime of murder. A killing in self-defense, for instance, would be an intentional killing, and yet not wrongful in the eye of the law. A predetermination to do a wrongful act without lawful excuse, is not, of necessity, that malice aforethought which is an essential element in the crime of murder.

**Instructions Construed Together.**
> Instructions in a murder case should be construed together, and where one, if standing alone might be error, when considered with others given may not be erroneous. Where, taking all instructions given together, they fairly construe the law of the case, a judgment will not be reversed on account of one of them being erroneous when construed alone.

APPEAL FROM ANDERSON CIRCUIT COURT.

November 21, 1878.

OPINION BY JUDGE HINES:

Appellant having been convicted of the wilful murder of Joseph Hanks, and his punishment fixed at confinement in the penitentiary for life, he appeals to this court. Among the alleged errors of the court below, upon which a reversal is asked, is the granting and the refusal to grant certain instructions.

The facts upon which the instructions were based are briefly these: On the 21st of February, 1878, Joseph Hanks was standing in the front door of the grocery of B. L. Cox, in the town of Lawrenceburg, engaged in conversation, when appellant, coming from the opposite side of the street, passed by Hanks and went to the rear of the store, where there was a bar, and took a drink. The evidence shows that Hanks accosted appellant, as he passed going to the rear of the store, with, "How are you, Joe?" to which appellant made no response. While appellant was in the back part of the store, Hanks went some six feet into the front part, and was resting with his elbows on the show-case as appellant came back in the direction of the front door, having his right hand in his coat pocket. When appellant got opposite to and in front of Hanks, he stopped and said to him, "Haven't I always treated you as a gentleman?" to which Hanks responded, "Haven't I always treated you the same way?" to which appellant replied, "No, you treated me like a dog yesterday," to which Hanks replied, "You say I did?" and started toward the front door, appellant moving in the same direction. When Hanks had about reached the door, with appellant three or four feet in the rear, appellant drew a pistol from his coat pocket, and shot Hanks in the back, who fell out on the pavement. Appellant then fired two or three more shots at Hanks, while standing over or near him. One of the witnesses says that when Hanks fell and appellant was attempting to shoot him again, Hanks said, "Don't, Joe, you have killed me already." No weapons were found on Hanks, and there is no evidence that he had any at the time of the shooting. Mary Maddox states that shortly after the shooting, after appellant had surrendered himself and was confined in the jail, she heard him say, "Leftar, I promised God yesterday if ever Joe Hanks spoke to me again, I would kill him, and I have done it."

The evidence that there was some difficulty between appellant and Hanks on the day before the killing, but so far as appears they did not come to blows. It also appears that on the evening preceding the killing Hanks had threatened to take the life of appellant, and

that these threats were communicated to appellant the same evening. The evidence also discloses that there had been a difficulty between these parties in 1875; that both were armed; that Hanks drew a pistol; and that they engaged in a struggle, but were separated without serious injury to either and without any shots having been fired. The evidence does not show the origin of this difficulty, nor by whom begun or provoked; but whatever it may have been, the difficulty was adjusted a year or two before the killing, and the parties had become apparently friendly.

It is objected that the law of self-defense was not properly given to the jury by the court below. Among the many instructions given upon this point, all of which we think are homogeneous, the most comprehensive is one given at the instance of counsel for appellant, and is as follows: "If the jury believe from the evidence that the defendant, Frazier, was without fault, and he believed and had reasonable grounds to believe that the decedent, Joe Hanks, intended to and was about to take his life, or to do him great bodily harm, and he had no other apparently safe means of securing himself from the then impending danger, he had the right to use such means as were necessary to prevent the decedent from taking his life, or committing upon him great bodily harm, even to the taking of decedent's life."

The other instructions upon this point say that the danger that would justify the killing must have been such that the killing "was necessary or apparently necessary to protect himself from death or great bodily harm, there and then about to be immediately inflicted upon him by Hanks, and from which there was to him no other apparently safe means of escape than the killing of Hanks." The words objected to in these instructions are: "there and then about to be immediately inflicted." Counsel for the appellant insist that these instructions are in conflict with the law of self-defense as laid down in *Phillips v. Commonwealth,* 2 Duv. 328; in *Young v. Commonwealth,* 6 Bush 312; in *Bohannon v. Commonwealth,* 8 Bush 481; and in *Holloway v. Commonwealth,* 11 Bush 344. This court, in *Kennedy v. Commonwealth,* 14 Bush 340, in commenting in these cases and in reference to instructions containing similar language says: "There is nothing in what is said of either class which conveys the idea that the killing will be excused unless the danger exists, or on reasonable grounds is believed to exist, at the moment of striking the fatal blow." It appears to us that the instructions in

this particular conform to the law as expounded in those cases, and that it is unnecessary to elaborate the reasons therein so fully set forth.

It is also claimed that the court erred to the prejudice of the appellant in the definition of wilful, and of malice aforethought, contained in the first instruction. There it is said that "a wilful killing is an intentional and not an accidental killing," and that "by the term malice aforethought is meant a premeditation in the mind to do a wrongful act without lawful excuse, and it is not material how recently before the act such determination is formed."

It is clear that if these definitions are unaided by the other instructions in the case they are misleading, and might be highly prejudicial to the appellant. An intentional killing does not necessarily imply the crime of murder. A killing in self-defense, for instance, would be an intentional killing, and yet not wrongful in the eye of the law. A predetermination to do a wrongful act without lawful excuse is not, of necessity, that malice aforethought which is an essential element in the crime of murder. It must be a predetermination to kill, and that intention must occupy the mind at the time of the killing.

In the second instruction it is said, "If Frazier wilfully and with malice aforethought killed Joseph Hanks," and in the third and fourth instructions the language is, "If he wilfully shot and killed Hanks." The fourth instruction granted at the instance of the appellant's counsel reads: "A killing, to constitute murder, must be done unlawfully, and unless it be unlawful it cannot have been done with malice aforethought, although it may have been premeditated."

We think these instructions, when considered together, present the law with sufficient clearness to render it morally certain that the jury could not have been misled to the prejudice of the appellant. The jury are told that the killing must have been intentional, it must have been predetermined, and it must have been unlawful. There is nothing in the instructions, when taken together, that could possibly lead the jury to determine that a previous malice, not existing at the time of the killing, would authorize a conviction.

Objection is made that the court erred in refusing to give instruction "6," asked for by appellant. That instruction in substance tells the jury that if appellant, at the time of the killing, had reasonable grounds to believe and did believe that Hanks was about to take his life, or to do him great bodily harm, and that there was no other

apparently safe means of securing himself from the impending danger, he had the right to take the life of Hanks, and that notwithstanding the fact that the grounds upon which appellant acted did not exist, and that he was in fact in no actual danger at the hands of Hanks. This view of the law we think is most clearly presented in several of the instructions given in the case. In the instructions given, the right of appellant, in self-defense, to take the life of Hanks, is based, not upon the actual existence of immediate danger to his own life, but upon his belief founded upon the appearances of danger. The law upon this point having been fully and clearly presented in other instructions, the instruction refused could not have served a beneficial purpose, and was therefore properly rejected. *Kennedy v. Commonwealth,* 14 Bush 340.

It is also insisted that the court below erred in refusing to grant a new trial upon the grounds of partiality and prejudice, shown to have existed in the minds of the jury. There is evidence in the record conducing to show that after the trial it was ascertained that one of the jurors had said, prior to his being sworn as a juror, that the appellant was guilty. The question of the competency of this juror was not raised, as in fact it could not have been, until the motion for a new trial was made. As has been held by this court in *Kennedy v. Commonwealth,* 14 Bush 340, and in *Terrell v. Commonwealth,* 13 Bush 246, we have no power to reverse for an error of that nature, as the decision of the court upon a motion for a new trial is not subject to exception. Secs. 281 and 282, Criminal Code.

Judgment *affirmed.*

*John Rodman & J. W. Rodman, for appellant.*

*Harlin Cohen, C. A. & P. W. Hardin, T. E. Moss, for appellee.*