## TOM WRIGHT V. THE STATE.

### No. 1646. Decided April 26, 1899.

**1. Change of Venue—Facts as to—Bill of Exceptions.**

In order to require a revision of the order of the lower court refusing a change of venue, a bill of exceptions must have been reserved, prepared, approved, and filed at the term of the court at which the order was made; and the facts upon which the same was based must be embodied in said bill. A statement of facts pertaining to the matter, filed ten days after the adjournment, will not be considered. Code Crim. Proc., art. 621.

**2. Murder—Threats by Deceased—Self-Defense—Charge.**

On a trial for murder, although there may be evidence adduced of threats by deceased against defendant, still the court would not be required to charge on self-defense predicated upon such threats where there is a failure to introduce any testimony indicating that at the time .defendant shot and killed deceased he (deceased) was doing any act which then showed an intention to execute such threats.

**3. Same.**

It has never been the rule in this State that mere antecedent or former hostile acts or attacks would authorize a person threatened to arm himself, seek his enemy, and shoot him down in the absence of some hostile act or demonstration made by such enemy at the time against the slayer. A party has no right to take the initiative and slay another upon mere apprehension unaccompanied by some overt act on the part of the person slain.

**4. Same—Self-Defense—Instructions.**

On a trial for murder, a special requested instruction to the effect that if defendant had reason to believe, from deceased's acts prior to and at the time of the killing, that the deceased would take his life, he would have the right to act upon such apprehension, and would be justified in such killing upon the grounds of self-defense, was properly refused where it appeared from the evidence that because defendant feared deceased, who had threatened him, he procured a shotgun, sought out deceased, slipped up on him stealthily, and without warning shot him down.

**5. Acts, etc., of Coconspirator—Charge.**

On a trial for murder, a charge was entirely proper which instructed the jury that unless they found a conspiracy to exist between defendant and another, who appeared to have acted with him, they would wholly disregard the acts and. declarations of such supposed conspirator.

**6. Jury Law—Misconduct of Juror—Bill of Exceptions—Practice.**

Where a juror who qualified on his voir dire examination is afterwards impugned on account of an adverse opinion of defendant, a bill of exceptions filed during the term is essential to show the facts pro and con pertaining to the matter. Such facts, if embraced only in a statement of facts filed after the term, will not be considered.

APPEAL from the District Court of Erath. Tried below before Hon. J. S. STRAUGHAN.

Appeal from a conviction for murder in the first degree; penalty, death.

Appellant was charged by the indictment with the murder of John Adams, on the 18th day of December, 1897, by shooting him with a gun.

The essential facts attendant upon the killing are the same as those stated in Ex Parte Wright and Leslie, 39 Texas Criminal Reports, 193, which was a writ of habeas corpus sued out for bail in this case, and it is not necessary to make a further statement.

No briefs for either party have come to the hands of the Reporter.

Nor is appellant's motion for rehearing, which appears to have been filed and to have been overruled without a written opinion, found in the record as it has come to the Reporter's hands.

*Robt. A. John*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal.

Appellant assigns as error the action of the court in refusing to change the venue. There is what purports to be a statement of facts in connection with the motion to change the venue, but the same was filed on the 14th day of June, 1898, ten days after the adjournment of the court. There is no bill of exceptions taken to the action of the court in overruling the motion for a change of venue. On neither account can we revise the action of the court. Article 621, Code Criminal Procedure, does not authorize a revision upon appeal of the action of the court in refusing to change the venue unless the facts upon which the same was based are presented in a bill of exceptions prepared, signed, approved, and filed at the term of the court at which such order was made. Blackwell v. State, 29 Texas Crim. App., 194; Lacy v. State, 30 Texas Crim. App., 119; Smith v. State, 31 Texas Crim. Rep., 14; Miller v. State, 31 Texas Crim. Rep., 609; Adams v. State, 35 Texas Crim. Rep., 285.

Appellant asked the following special instructions: "That if they [the jury] believe from the evidence that shortly before the killing of deceased by defendant (if defendant killed deceased) the deceased approached defendant with a pistol, and by acts, and words accompanying his acts, created in the mind of defendant a reasonable apprehension of death or some serious bodily harm, defendant would have the right to act upon such reasonable apprehension as long as it lasted, and to retreat out of danger, and go to his home, and arm himself, and to go upon the streets of Dublin armed, and, judging of the danger from the defendant's standpoint, if it reasonably appeared to him, from the prior acts and declarations of the deceased and his general reputation as a man that would probably execute a threat (if he had such a reputation), and his habit of going armed (if he had such a habit), that it was the purpose and intention of the deceased to make an immediate attack upon defendant at the first opportunity. And if you further believe that the acts of deceased prior to the killing, and his threats to take the life of defendant at the first meeting with defendant (if deceased made such threats), produced in the mind of defendant a reasonable apprehension of death or serious bodily harm, then defendant would have the right to take the initiative, and to act upon such apprehension, and slay deceased in self-defense; provided, defendant did not seek deceased with the purpose of killing him." And also the following requested instructions: "If you believe from the evidence that John Adams made an assault upon defendant, and was induced to desist from said assault by the

fact that defendant informed said Adams that he (defendant) was un-
armed, and by the interference of bystanders; and if you further believe
that Adams then told defendant to go and fix himself, that it had to be
settled, or used to defendant words of like import, meaning thereby to
inform defendant that he (Adams) intended to renew the assault at the
next meeting with defendant; and if you believe that said assault made
by Adams on defendant, if any, was of such a motive as to produce in the
mind of defendant a reasonable apprehension of death or serious bodily
harm,—then defendant would have the right to act upon such reason-
able apprehension, and arm' himself, and get ready to defend himself
against such threatened danger. And if you further believe from the
evidence that, after Adams had assaulted defendant, if he did so, he re-
fused to compromise or settle the trouble with defendant, but that he
threatened the life of defendant, and sent word that he would kill him
if he (defendant) did not leave town; and if you further believe that
such threats or messages, if any, were communicated to defendant; and
if you further believe that said threats, together with the conduct of and
acts of Adams, produced in the mind of defendant the belief that Adams
would immediately, upon the first opportunity, attempt to execute the
threats, and to take the life of defendant,—then defendant would have
the right to act upon such apprehension and belief; and if it reasonably
appeared to defendant, judging of the danger from his standpoint, tak-
ing into consideration the act, conduct, and threats of deceased, if any,
prior to and at the time of the killing, that deceased was then going
to execute or attempt to execute the threats, if any, and to take the life
of the defendant, defendant would have the right to act upon the appre-
hension of danger as it appeared to him, and to kill deceased in self-de-
fense."

These charges were refused by the court, and appellant reserved his
bills of exception thereto. We would observe here that the court
charged on murder in the first degree, murder in the second degree,
manslaughter, and also gave a charge on self-defense, predicated on
.threats, in connection with some overt act of the deceased, which, viewed·
from the defendant's standpoint, reasonably manifested to him that de-
ceased was then about to execute such threat. After reviewing the facts,
it occurs to us that there would have been no error had the court entirely
failed to charge on any phase of self-defense; for, although threats of
deceased were admitted in evidence, we fail to find any testimony in-
dicating that, at the time defendant shot and killed deceased, deceased
was doing any act which then indicated an intention to execute threats.
Irwin v. State, 43 Texas, 237; Penland v. State, 19 Texas Crim. App.,
365; Lynch v. State, 24 Texas Crim. App., 350. The proposition in-
volved in the requested charges invokes the rule followed in Philips
v. Com., 2 Duv., 329; Carico v. Com., 7 Bush, 124; Bohannon v. Com.,
8 Bush, 481. But we do not understand this to be the law now, even in
Kentucky, and it has not been followed elsewhere. ˙ In this State it

has never been the rule that mere antecedent threats, or former hostile acts, would authorize a person threatened to arm himself, seek his enemy, and shoot him down, in the absence of some hostile act or demonstration made by such enemy at the time. See Lander v. State, 12 Texas, 462; Johnson v. State, 27 Texas, 758. In the latter case it was said that encountering an enemy, who had threatened one, on the public highway, would not be adequate cause to engender anger, etc., sufficient to render the mind incapable of cool reflection. Much less would the fact that one had previously been threatened or had been attacked by the deceased on a former occasion authorize such person to arm himself, hunt down his adversary, and slay him, while such person was making no hostile act or demonstration whatever against the slayer. Yet such seems to be the doctrine suggested by the refused charges. Said charges, after reciting a number of facts, presumably taken from the record, suggesting threats, and the general course of conduct of deceased towards appellant, then proceeds to lay down the proposition that if the jury believed such threats and such course of conduct, and that it was the purpose and intention of the deceased to make an attack upon defendant at the first opportunity, then the defendant would have the right to take the initiative, and to act upon such apprehension, and slay deceased. This is the effect of the first special requested instruction. The second is couched a little differently, but, without suggesting any overt act on the part of the deceased as a predicate for an attack by defendant, proceeds to tell the jury that if they believed that it reasonably appeared to defendant, judging of the danger from his standpoint, taking into consideration the acts and conduct and threats of the deceased, if any, prior to and at the time of the killing, that deceased was then going to execute or attempt to execute the threats, if any, and take the life of defendant, defendant would then have the right to act upon the apprehension of danger, etc. This charge is drawn a little more adroitly than the former, and assumes that deceased may have been doing something at the time of the killing manifesting that he was then going to execute, or attempt to execute, the threats. But when we recur to the record there is absolutely no testimony upon which to base this charge. It is a mere assumption of a possible overt act, and without any evidence to support it. The State's testimony shows that because appellant was threatened by deceased, and that he feared him, he conspired with one Leslie, and they procured a shotgun, with which appellant was armed at the time, and together they sought deceased. When they found him, he had his back towards them, opening the door of a bus or cab. Defendant slipped up on him steathily, and shot him down without any warning; and, after he fell, approached his prostrate body, and fired another load into it. The testimony on the part of defendant fails to show that the homicide occurred otherwise than as established by the State. No witness states an overt act or any hostile demonstrations on the part of the deceased; nor do they suggest any act or preparation on his part indicating that he was then preparing

or about to make an attack on defendant. So far as we are advised, at the time he was unaware of the defendant's presence in that vicinity. In such a state of the record, we fail to see how the doctrine of self-defense, in connection with threats, could operate to the benefit of defendant. More than this, appellant had full oportunity to require a peace bond, which he failed to avail himself of. If, because of threats, a citizen of this State has a right to arm himself, and assassinate the person who makes the threats, in the language of Johnson v. State, supra, "a full floodgate would be given to the most wicked passions; and murder, fearful as it already is, in a tenfold greater degree would stalk through the land, clothed in the panoply of the law." In our opinion, the court did not err in refusing to give the requested instructions. Appellant, however, had the benefit of any possible overt act on the part of deceased, in connection with threats, in the charge of the court as given; and, more than this, he had the full benefit of all the threats made by the deceased against him, and all the acts indicating any animosity of deceased against him, as bearing on the question of passion or fear engendered by deceased's course of conduct towards him, in the court's charge on murder in the second degree; and yet the jury, under the stubborn facts of this case, refused to believe that appellant's mind was excited at the time of the homicide. On the contrary, they found that the homicide was committed by defendant of his express malice aforethought, when his mind was calm and deliberate, and he was capable of contemplating the consequences of his act.

Appellant objected to that portion of the court's charge as to declarations and acts of Frank Leslie, and their effect so far as appellant was concerned. The court's instruction on this subject was entirely proper. It authorized the jury to only consider the acts of Leslie as a coconspirator with defendant, and, unless they found a conspiracy to exist between them, to disregard, and not consider any and all acts of said Leslie. We understand this to be a correct enunciation of the rule of law upon this subject.

Appellant insists that this case should be reversed because of the conduct of the juror I. A. Griffith. This objection occurs in the motion for new trial, and it is stated therein that said juror qualified himself as an impartial juror when examined on his voir dire; but that it was discovered afterwards that he had previously formed an opinion adverse to appellant. The court appears to have heard testimony in regard to this juror, and said testimony is found in the record, and is certified to by the judge as a true and correct statement of the facts proven on the hearing of the motion for new trial. The same, however, was filed on the 14th day of June, ten days after the final adjournment of the court for the term; and it is urged on the part of the Assistant Attorney-General that we can not consider the same, because there is no bill of exceptions in the record involving this question; and, if there was, that the statement of facts could not be considered in that connection, because filed after the term. We are inclined to agree to both conten-

tions. Appellant, in our opinion, should have reserved a bill of exceptions to the action of the court in regard to this juror during the term, and said bill should have embraced the facts pro and con relating thereto. The statute with reference to filing a statement of facts after the term seems to refer to the statement of facts involved in the trial of appellant on his plea of not guilty, and not a statement of facts involved in some ancillary matter. If we concede, however, that this matter was properly presented in the record, still we fail to see any error in the action of the court. The record discloses that the court heard the testimony pro and con as to whether or not the juror Griffith had formed and expressed an opinion prior to his being taken on the jury, and the court did not err in holding the juror qualified. We have examined the record carefully, and, in our opinion, the evidence supports the verdict of the jury, and the judgment is affirmed.

*Affirmed.*