## W. H. Lax v. The State.

### No. 2771.   Decided December 18, 1903.

**1.—Change of Venue—Bill of Exception—Adjournment.**

Where, on motion for change of venue, the record shows that the bill of exception taken to the order overruling the motion was filed July 28th, the court having adjourned on the 11th day of the same month, the said bill of exception was filed too late and could not be considered.

**2.—Same—Discretion of Court.**

Where the evidence on motion for change of venue was very weak, the court did not abuse its discretion in overruling it.

**3.—Jury and Jury Law—No Objectionable Juror on Jury.**

Where the bill of exception claimed that the court erroneously overruled defendant's challenges for cause, which forced him to exhaust his peremptory challenges, but it appeared that the State agreed to extend to him eleven additional peremptory challenges, of which he took advantage, and which it is not shown he exhausted and that an objectionable juror was placed upon the jury, the objection is without merit.

**4.—Evidence—Cross-Examination—Rebuttal.**

Where a State's witness was asked who was the father of the child alleged to have been killed by defendant, and she answered that he was the father, and that she knew it because he was the only one who had had sexual intercourse with her, whereupon the defense went into the particular acts of intercourse on cross-examination, after which the State re-examined her in rebuttal of these matters, there was no error.

**5.—Grand Jury—Indictment—Talesmen—Bill of Exception.**

Where, upon reassembling of the grand jury after being discharged, two of the grand jurors failed to appear and their places were supplied, and the bill of exception taken to the court's action in refusing to quash the indictment on this ground does not set forth the facts, there is nothing presented for review.

**6.—Bill of Exception—Access to Witnesses by Counsel.**

Where the bill of exception complained that counsel for defendant were not permitted to speak to witnesses out of the presence of their uncle, but the qualification of the bill by the trial judge controverted this contention, there was no error shown.

**7.—Evidence—Conversation Between Defendant and Witness.**

A conversation between defendant and the main State's witness to the effect that about a month before the day of the birth and death of witness' child, he told her that she was pregnant and to hush crying, that no one would know it, and that he would make away with it and that she replied he could not do it. which conversation was stated in response to a question by the State as to when witness found out she was going to give birth to a child, was admissible.

**8.—Same—Cross-Examination—Rebuttal.**

Where defendant's counsel on cross-examination of witness asked her whether she had not worn her dresses longer than the one she was then wearing. and endeavored to show that she had been dressed in that dress especially for the trial, and the State, on cross-examination about the length of her dresses, brought out the fact that the day after the birth of her child she wore one of Mrs. B.'s dresses, because her own were soiled and that the only long dress she ever wore was not her own, there was no error.

**9.—Bill of Exception—Question Not Answered.**

Where the bill of exception does not show whether the question to witness, that if she did not state that she did not care anything about the nasty stinking thing. meaning the alleged murdered child, was answered, the same can not be considered.

**10.—Witness Under Rule—Deputy Sheriff.**

It is within the discretion of the court to excuse officers of the court from the rule, and unless an abuse of this is shown, the exception will not be considered.

**11.—Order in Court—Conduct of Bystanders.**

Where the demonstration of bystanders during the trial was at the expense of defendant's counsel, and not calculated to prejudice defendant's rights, while subject to reprimand, was not cause for reversal.

**12.— Bill of Exception—Questions Not Answered.**

Where the bill of exception to questions propounded to defendant, as to when he discovered that the mother of the alleged murdered child was pregnant, whether he procured any medicine and why he did not tell Mrs. A. to come and stay at his house, etc., does not show the answers thereto, it will not be considered.

**13.—Charge of the Court—Circumstantial Evidence.**

Where the testimony does not bring the case within the rule of circumstantial evidence, the court should not give a charge on that subject.

**14.—Misconduct of the Jury—Verdict.**

Where attorneys for appellant in the motion for new trial, set forth the allegation supported by their affidavit, that after the conviction of defendant, one of the jurors who sat upon his case stated to them that upon the retirement of the jury the foreman had stated: "Gentlemen, we must give this man the death penalty, or he will be hanged before morning." and that said juror refused to come into court to testify and that a subpoena had been issued for him, which the officers it appeared had not executed, although the juror was within ten miles of the courthouse, and could have been brought into court in time before final adjournment to testify, the verdict will be set aside.

**15.—Same—A Verdict Based on Fear of Mob Law Invalid.**

A verdict assessing the death penalty, rendered by a jury to avoid the hanging of defendant by a mob, is · not untrammeled and unbiased, but a coerced conviction, and a party accused of crime is entitled to a verdict based upon the facts and not upon public opinion, or to avoid the consequences of public opinion, the court should have enforced the attendance of the juror who attacked the verdict and made inquiry into the manner of how the jury rendered it.

Appeal from the District Court of Hunt. Tried below before Hon. T. D. Montrose.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*H. D. Wood* and *A. K. Doss,* for appellant.

*Howard Martin,* Assistant Attorney-General; *Sam S. Frazer* and *Sam D. Stinson,* for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was given the death penalty for the murder of an infant. When the case was called for trial, application for change of venue was made and overruled. The bill of exceptions was filed July 28, the court having adjourned on the 11th day of the same month. Article 621, Code of Criminal Procedure, provides that the evidence in regard to change of venue must be perpetuated in bill of exceptions prepared and filed during term of court. Blackwell v. State, 29 Texas Crim. App., 194; Pruitt v. State, 20 Texas Crim. App., 129; Bowden v. State, 12 Texas Crim. App., 246;

Adams v. State, 35 Texas Crim. Rep., 285; Kutch v. State, 32 Texas Crim. Rep., 184; Smith v. State, 31 Texas Crim. Rep., 14; Miller v. State, 31 Texas Crim. Rep., 609; Jackson v. State, 30 Texas Crim. App., 664; Wright v. State, 40 Texas Crim. Rep., 447; Cortez v. State, 4 Texas Ct. Rep., 1. This requirement of the statute is not relieved by the recent statute authorizing bills of exception to be filed out of term time, and within twenty days after the adjournment of the court. Blackwell and Cortez cases, supra. While under the two last named cases the question in regard to bill of exceptions was not discussed, the relation of the statute of 1887 with reference to filing statement of facts after term time was; and it was held that, by virtue of article 621, Code of Criminal Procedure, the evidence introduced in regard to the change of venue must be prepared and filed during the term time; and that this statute was not altered or changed by the terms of the acts of 1887 extending the time beyond the adjournment of court for filing statement of facts. But if this were not true, the bill as prepared and filed in regard to this matter would show no error. The evidence therein stated did not show that the court abused the legal discretion authorized by the statute; in fact, the testimony was very weak, as we understand it.

There are several bills of exception reserved to the rulings of the court while impaneling the jury. It is claimed by appellant that the court, during the impaneling of the jury, erroneously overruled his cause for challenge in regard to several of the jurors, which forced him to exhaust a corresponding number of his peremptory challenges. When the peremptory challenges were exhausted other jurors were tendered, and the State agreed to extend to appellant eleven additional peremptory challenges to cover those in which the court had overruled his challenges for cause. This was taken advantage of by appellant. It is not shown in any of the bills of exception that he had exhausted these later peremptory challenges, and thereafter an objectionable juror was placed upon the jury. So the bills as presented show no error.

Maud Ross, mother of the alleged murdered infant, while testifying in behalf of the State was asked who was the father of her child alleged to have been killed on June 11, 1903; and further, how long before the birth of the child had she had sexual intercourse with appellant. Her answer was that appellant was the father of the child, and that he began having sexual intercourse with her a little more than a year before the birth of the child. The objections were that this was irrelevant and immaterial, and no part of the res gestae, and prejudicial of appellant's rights before the jury. This is explained by the court. He states that this witness was asked who was the father of the child, and how she knew who its father was; and she answered that appellant was the father of the child, and she knew it because he was the only one who had had sexual intercourse with her, but she was not asked the particulars in relation thereto, nor the time of it. Defendant on cross-examination

went into the particular acts of intercourse, and the time and place of each, and attempted to prove by her that she was willing to such acts and sought opportunities for the same. And the State then upon re-examination asked her questions in rebuttal of these matters. There was no error in this.

Neither was there any error in the refusal of the court to quash the indictment. The bill of exceptions is very meager, but it shows, when taken in connection with the explanation of the judge, that the grand jury had been discharged and were resummoned, and upon their being called together two of the grand jurors failed to appear, and their places were supplied. The facts in relation this matter are not shown. As the bill is presented to us there is really no question for discussion.

Nor is there any error or injury shown in regard to the matter set out in bill of exceptions number 8. Appellant's counsel asked to talk with the two witnesses, Maud and Lola Ross. The court informed him he could do so, if they would talk with him. They declined to do this. The explanation to the bill shows, "that the court informed counsel they could talk with the girls if they would talk with them, and the testimony introduced upon this motion did not show that they (defendant's counsel) were refused all necessary access to the witnesses, but on the contrary they were afforded all necessary access to the witnesses and could have talked to them out of the hearing of their uncle Mr. Hillin, or anyone else." The motion set up that they were not permitted to talk with these children out of the presence of their uncle Hillin. But the bill, as qualified by the judge, shows this was not true. As the bill presents the matter we find there was no injury.

Witness Maud Ross while upon the stand was asked if she did not have a conversation with defendant about a month before the 11th of June, the day of the birth and death of her child, in which defendant told her that she was pregnant, and that she was crying and he told her to hush, that no one would know it, and that he would make away with it, and that she told defendant he could not do it. This was clearly admissible. The court explains this, as follows: "State's counsel asked witness when was it she found out she was going to give birth to a child. She answered about one month before the child was born. Being then asked how she found out, she detailed substantially what is set forth in this bill."

On the day following the homicide, this witness Maud Ross wore one of Mrs. Bell's dresses. Motion was made to exclude this testimony, or rather exception was reserved to its introduction, because irrelevant, immaterial, no part of the res gestae, and calculated to inflame the minds of the jury against defendant. The court explains this bill by stating: "Defendant's counsel on cross-examination had asked witness if she had not worn her dresses longer than the one she was then wearing, and endeavored to show that she had been dressed in that dress especially for the trial. The State, in rebutting said testimony, asked the girl

about the length of the dresses she had worn before her child was born, and she disclosed the fact that the day after the birth of her child she wore one of Mrs. Bell's dresses, because her own dresses were all soiled; and therefore the only long dress she ever wore was not her own." As presented this was admissible.

Mrs. Jordan, mother of appellant, was asked, "Did you not, about one month prior to the killing of the infant baby of Maud Ross, have a conversation with Mrs. Allman, in which you told Mrs. Allman that you, Mrs. Jordan, did not care anything about the nasty stinking thing, nor who was the father of the said Maud's unborn child?" To this question exception was reserved, because it was irrelevant, immaterial and no part of the res gestae and hearsay. The court explains this by stating, that "State's counsel, after witness had stated she had never talked to any one about Maud Ross's condition before the birth of the child, asked the question. This was done apparently for the purpose of contradicting the witness and showing her feelings toward Maud Ross." Neither in the bill nor in the explanation is it shown that the question was answered, or what the answer of the witness would have been. She may have answered no.

The testimony of the sheriff (Mason) in regard to the confession of defendant was properly admitted. Proper predicate was laid.

Deputy Sheriff Craddock was called as a witness in behalf of the State with the other witnesses at the time the rule was invoked. The court excluded him from the rule. Exception was taken to this. The court states that the witness was an officer of his court, and for this reason he exercised his discretion in excusing him from the rule. No abuse of the legal discretion of the court is shown.

While the witness Dr. Coppage was upon the stand he stated that, in his opinion, when he reached the scene of the homicide the child had been dead about three hours. Appellant then asked witness, "If when he arrived at the home of defendant, where the homicide occurred, he remembered the time," and he repried it was a little after 5 o'clock. Counsel then propounded the following question: "Dr. Coppage, if you have said that the child had been dead about three hours, and Maud Ross has testified that the child was born at fifteen minutes after 4 o'clock, and you have just stated that you got there soon after 5 o'clock, how do you reconcile your medical opinion with the facts in this case?" Witness answered, "Wait a minute and I will tell you." Counsel replied, "All right, I will." Then the witness answered, "I did not find the child until I had been there about two and one-quarter hours." The bill recites that the audience in the courtroom "laughed, cheered, hissed, cat-called, yelled, and shrieked and applauded said witness, and did other things unbecoming those orderly, quiet and legal modes of procedure which should surround a court of justice where men are being tried for high crimes and misdemeanors," etc., which they allege was very reprehensible conduct and conveyed to the minds of and im-

pressed the jury with the fact that the audience was clamorous for the extreme penalty of the law. The court explains this by stating that the bill of exceptions is not correct. "There was no 'cheering, hissing, cat-calls, yells or shrieks nor applause as set forth herein, and other things unbecoming those orderly, quiet and legal modes of procedure which should surround a court of justice;' on the other hand at the time the incident happened there was a ripple of laughter through the audience, which was not boisterous, and was evidently caused at the discomfiture of defendant's counsel upon the answer of the witness, after having conducted the examination in a mode that would naturally provoke a smile upon the witness making the answer he did. The demonstration did not appear in any way to be other than at the defendant's counsel, and could not have prejudiced the rights of defendant." The bill of exceptions as in the record does not require a reversal of the judgment. Such conduct on the part of the audience, even as stated by the court, should be reprimanded, which was promptly done in this instance.

While appellant was testifying, he was asked: "Did you make any investigation as to who was the father of the unborn child of Maud Ross, after you had discovered that said Maud Ross was pregnant?" This was objected to. The answer is not stated in the bill, if any was given. The following bill is in the same condition. The question was, "Did you get any medicine for Maud Ross after you knew she was pregnant?" He was further asked, "Why did you not tell Mrs. Allman to come or stay at your house, when she was there, and after witness Maud Ross had already been confined in child-birth?" The answer to this question, if any, was not given in the bill.

Exception was reserved because the court failed to charge the law applicable to circumstantial evidence. In this there was no error. This is not a case coming within the rules of circumstantial evidence.

There were several requested instructions refused. Without going into detail in regard to these charges, it is sufficient to say that the law applicable to the case was sufficiently given in the general charge, and there was no error in refusing the requested instructions.

The remaining bill of exceptions was reserved to the alleged misconduct of the jury. The bill shows, in substance, that after the conviction a juror named McKinney was in the law office of R. L. Porter, Esq., in the absence of said Porter, and stated to the other two attorneys in the case, Messrs. Wood and Doss, that upon the retirement of the jury to consider their verdict, the foreman, Carlisle stated, "Gentlemen, we must give this man the death penalty, or he will be hanged before morning." That these attorneys then asked said McKinney if he would make an affidavit to what Carlisle had stated in the jury room, and McKinney replied he did not want to get mixed up in a thing of that kind, and did not want to have any trouble about it. These con-

versations occurred on the 9th of July, and when McKinney refused to make the affidavit, Messrs. Wood and Doss, attorneys, filed their affidavit as to what occurred, and was said by and between McKinney and themselves. During the 9th of July, the district judge was absent attending a confederate reunion, and the parties could not obtain process therefore for the witness McKinney, who lived about ten miles in the country. On the morning of the 10th, upon the convening of court, process was asked for McKinney. The request was granted, process issued and placed in the hands of a deputy sheriff, who returned it not executed for want of time. That early on Friday morning, July 10th, about 8:30 o'clock, the attorney made application for the subpoena for the juror McKinney, and process was issued and placed in the hands of Tanner, deputy sheriff; that the court announced to counsel on both sides that he would take up the hearing of the motion for new trial, and all matters connected therewith at 10 o'clock on Friday morning, July 10th, owing to the fact that the case of Cook v. Cook was on trial, the motion for new trial was not begun until 2 o'clock in the evening of July 10th. That the juror summoned was not farther than ten miles from Greenville, where the sitting of the court was held; that both counsel for appellant (Wood and Doss) repeatedly requested the deputy sheriff, who had process, to serve the said process, and this request was made both before and after 10 o'clock; and the deputy sheriff replied that he would not, because he would not have time. The court qualifying this said: "That no request for postponement of the hearing of the motion was asked by defendant, which would have been granted if request had been made." If these facts are true, and they are agreed to, and approved by the court, there was at least five and one-half hours from the time of the issuance of the process until the motion for new trial was called at 2 o'clock. The juror lived not father than ten miles from where the court was sitting, and within that time could easily have been brought into court. It would have been very moderate riding to have ridden twenty miles in five and one-half hours. But the deputy sheriff refused upon repeated request to go after the juror, because in his judgment he did not have time to serve the process. There is no attempt at controverting the statements, either as to McKinney's statement to the attorneys or in regard to the refusal of the deputy sheriff to serve the process. If it is a fact, and it is uncontroverted, that the foreman of the jury made the statement imputed to him, certainly it was a most serious matter, and one which would have required the trial court to set aside the conviction; or in default of this, a reversal of the judgment on appeal. A verdict of the serious character as this, which is a death penalty, rendered by a jury to avoid the hanging of a defendant by a mob, is not untrammeled and unbiased; it is a coerced conviction. A party accused of crime is entitled to a verdict based upon the facts, and not upon public opinion or to avoid the con-

sequences of public opinion. The court should have forced the attendance of the juror McKinney, and if necessary of all of the jurors, and made inquiry into the matter; and if found as stated by McKinney, then the verdict should have been set aside. We do not believe that this conviction should be affirmed, wherefore the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Motion for rehearing overruled without written opinion.—Reporter.]