## F. J. WHITE V. THE STATE.

*No. 588. Decided March 2.*

1. **Assault with Intent to Murder—Charge of Court—Malice.**—On a trial for assault with intent to murder, where the court, in defining the constituents of the offense, instructed the jury, that "two things must concur: first, an assault; and second, a specific intent to kill. Without a simultaneous occurrence of these two constituent elements there can be no assault with intent to murder;" omitting one of the essential elements of the offense, to wit, "malice;" *Held*, the omission is not reversible error when the charge in other portions embraces fully and makes a proper application of all the essential elements of the offense, including a definition of malice.

2. **Same—Charge.**—While a paragraph contained in a charge may be subject to criticism on account of illegibility as to some of the words and signs used, it will not constitute reversible error where, in connection with other portions of the charge, it is clear that the jury could not have been misled thereby.

3. **Same—Charge—Provocation.**—On a trial for assault with intent to murder, where there was no pretext of any former provocation, and where the issue on which the evidence was adduced was an assault on defendant at the time by the injured party, *Held*, that it was not error for the court in its charge to limit the provocation to the facts in evidence.

4. **Conflicting Evidence—Verdict—Practice on Appeal.**—Where the jury have solved the issues presented in the testimony under a fair and proper charge of the court and returned a verdict of guilty, which has been approved by the trial judge, if there is sufficient evidence to sustain the verdict this court will not disturb it, although apparently the weight or preponderance of the testimony is against it.

APPEAL from the District Court of Wichita. Tried below before Hon. GEORGE E. MILLER.

This appeal is from a conviction for assault with intent to murder, the punishment being assessed at imprisonment in the penitentiary for two years.

The testimony of the witness Jim Craft shows the principal evidence for the prosecution. He testified: "I reside in Iowa Park. I know the defendant. I am the Jim Craft upon whom the defendant is charged with making an assault with intent to murder, about February 20, 1894. The difficulty occurred between the defendant and myself, in the evening. I was sitting in the O. K. saloon, in the town of Iowa Park, Wichita County, Texas, just before the difficulty occurred, when defendant came to the rear door of the saloon and opened it, and motioned for me to come out. I got up and went to the back door, and after I had been there a few moments the defendant caught hold of me and commenced backing me off and cutting me with a knife. I backed up against a barrel of beer bottles, and pulled out a beer bottle and struck defendant over the head. Defendant did not quit cutting me until I beat him off with a beer bottle. He cut me six times. He cut me in the arm, in the back, and in the side, just over the heart. And he cut me twice to the hollow, so that I could breathe through my ribs. I did nothing to provoke this difficulty, and I was in bed six weeks from the effects of the wounds. I like to have died from the result of said wounds. This difficulty occurred in Wichita County, Texas, in February, 1894."

Cross-examined: "I did not go down to Mr. Barlow's blacksmith shop just before the difficulty and call the defendant away from the blacksmith shop, and take him up to the saloon with me. I did not call Frank Hardisty just before the difficulty occurred. Frank Hardisty came out just before the time we began to have the difficulty at the rear of the saloon. I had come out, and we were talking about a bottle of whisky, but when I came out there was no one at the rear end of the saloon except myself and the defendant. Frank Hardisty did not say to us that he thought we had dropped the matter about the bottle of whisky that morning; and Hardisty did not say, 'Hush that, and come in the saloon and behave yourselves;' and I did not say then and there to White, that 'I would cut his damned throat;' and I did not then and there put my hand in my right hip pocket and draw out a knife and push White back two or three steps, and Hardisty did not tell me to put up that knife. I did not strike White with but one beer bottle, and he quit cutting me as soon as I struck him over the head with the beer bottle. I did not go backward further than the beer barrel. White did not say, when Hardisty first came back to the rear end of the saloon, 'I never said that you stole the whisky;' and I did not reply thereto, that 'You have said that I stole the whisky;' and White did not reply, that 'I never said it;' and I did not reply, that 'I don't want any horse's ass going around over town saying that I stole the whisky.' White did not say, 'Look here, Jim, I don't want you to call me a horse's ass; but I never said

you stole the whisky;' and I did not say, that 'I would call him a horse's ass if it was necessary.' When Hardisty started back into the house, and before the cutting came off, I did not say to White that I would cut his damned throat."

This witness was impeached, as to truth and veracity, by five witnesses.

*Corrigan & Montgomery*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was tried on the 3rd day of May, 1894, in the District Court of Wichita County, on an indictment charging him with an assault with intent to murder. The jury found him guilty of said offense, and assessed his punishment at confinement in the penitentiary for two years, and from the judgment and sentence in said case he prosecutes this appeal.

The judge trying the case charged the jury on assault with intent to murder and aggravated assault, and gave a charge on self-defense. The appellant assigns as error the charge of the court as contained in paragraph 5, defining what it takes to constitute an assault with intent to murder, as follows: "In order to constitute the offense of an assault with intent to murder, two things must concur: first, an assault; and second, a specific intent to kill. Without a simultaneous occurrence of these two constituent elements, there can be no assault with intent to murder." The appellant complains, that the charge omitted one of the essential elements of the offense, to wit, malice. This is true, and it would unquestionably be error were it not supplied elsewhere in the charge, and in such a way as to have worked no injury to the appellant. Looking to other parts of the charge just preceding the clause alluded to, we find the court fully defines malice, and what character of malice it requires to constitute a homicide murder. And where the court afterwards proceeds to apply the law to the facts, and to present the case to the jury, and the jury are instructed, that if they believe from the evidence that defendant made an assault on Jim Craft, and at the very time he had the specific intent to kill him, and that, if death had resulted therefrom, the offense would have been murder, as before defined, that in such case they would find defendant guilty of an assault with intent to murder. While this charge is not after the form of the ordinary charge on an assault with intent to murder, yet it embraces all of the essential elements of the offense, and in our opinion the jury could not have been misled by failure of the court in the paragraph 5 complained of, to embrace, as one of the elements of the offense, malice.

It is also urged, that the court's charge defining manslaughter was confused and misleading, in that the word, or rather sign, "&" occurred between the words "sudden" and "resentment;" so far as to

make that part of the definition read "sudden and resentment" instead of "sudden resentment;" and appellent also insists, that the words "or terror" are so combined as to be confused and meaningless, and he has brought the original charge before us for our inspection. After a critical inspection of the same, we are unable to tell whether the mark, which seems to have been made with a pen, between the words "sudden" and "resentment" was intended for the sign "&," or is a mere dash between the words; and while the words "or" and "terror" appear to run together, we hardly think any one in reading the charge could have been misled thereby. The counsel, in reserving the bill of exceptions, say the judge read the charge all right, and they only discovered it when they came to inspect the charge. We can not believe that the jury were misled in this regard; especially when we take in connection with paragraph 9, in which the alleged error occurs, paragraph 10, following it, in which the same terms are used, the language employed being that of the statute (Penal Code, article 595), as follows: "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient," etc.

Nor in our opinion is the charge on manslaughter obnoxious to the criticism of appellant, that it confined provocation within too reserved limits. There was no pretext of any former provocation, and the jury were at liberty to take into consideration, in determining whether the offense was an aggravated assault, all that occurred at the time. The jury were correctly told, that insulting words or gestures were not adequate cause, but that an assault causing pain or bloodshed was; and they were not prohibited from looking to all that transpired then, including words and gestures, that might give character to the assault as calculated to inflame the mind of defendant. The defendant's contention, as appears from the evidence, was, that the assault on him at the time by the prosecuting witness was the provocation which reduced the offense, if any, to an aggravated assault, and this phase of the case was properly presented to the jury.

It appears from the evidence in this case that there were but three eye-witnesses to the entire difficulty—Hardisty, the prosecuting witness Jim Craft, and the defendant. The first two witnesses were introduced by the State. Hardisty, although a witness for the State, testifies to a state of facts which strongly indicates self-defense, and the defendant's own testimony in the main agrees with his relation of the facts. The prosecuting witness, Craft, traverses their testimony, and makes out a case for the State of assault with intent to murder. The defendant introduced five witnesses who impeached Craft's reputation for truth. Yet the jury, under a fair charge of the court, believed the witness Craft, and found the defendant guilty of an assault with intent to murder; and this verdict met with the approval and sanction of the judge who tried the case, who refused to grant defend-

ant a new trial, though it was urged that the verdict was not sustained by the evidence. This court has sometimes interfered even after the approval of the verdict by the court below, and granted a new trial, where there was not sufficient evidence to sustain the finding of the jury; but the instances are rare where we have interfered when there was evidence to sustain the verdict, though apparently the record disclosed that the weight or preponderance of testimony was the other way, this court in that regard conceding much to the verdict of the jury and the approval of the judge below, who saw and heard the witnesses testify, and on this account were better able to judge of their credibility than we, who have to pass upon the case from a bare inspection of the record. And in this case we follow the rule heretofore laid down, that the jury, having solved the issues presented in the testimony under a fair and proper charge of the court, and having found defendant guilty of an assault with intent to murder, and that verdict having been approved by the judge who tried the case, and there being sufficient evidence in the record to sustain that verdict, we will not disturb it.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge, absent.