## SHERMAN MARTIN v. THE STATE.

### No. 178.    Decided November 17, 1909.

**1.—Assault to Murder—Charge of Court—Theory of Defense.**

Where, upon trial of assault with intent to murder, the State claimed by its testimony that the defendant had carried away a newly-born infant and left it exposed to die, and the theory of the defense was, which he sustained by testimony, that he did not himself carry the child to the point where it was left exposed, and that he had no knowledge of that fact, there was reversible error in the court's failure to submit to the jury a charge on defendant's theory of defense, especially inasmuch as the court instructed the jury to find defendant guilty if he alone, or with others, thus exposed said child.

**2.—Same—Evidence—Declarations by the Defendant—Arrest.**

Where, upon trial for assault to murder, it appeared that defendant was not under arrest at the time he made certain statements with reference to the transaction to certain officers, there was no error in admitting such statements in evidence.

**3.—Same—Charge of Court—Aggravated Assault—Want of Specific Intent to Kill.**

Where, upon trial for assault to murder, an issue arose from the evidence as to whether there was a specific intent to kill on the part of the defendant in exposing a newly-born child by carrying it away and leaving it without attention in a secluded place, or whether this was done to hide the shame of his paternity or the disgrace of its mother, etc., the court should have charged as well on the issue of aggravated assault as on acquittal.

Appeal from the District Court of Cherokee.    Tried below before the Hon. James I. Perkins.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Bennett B. Perkins*, for appellant.—On question of the Court's failure to charge on defendant's theory of defense:   Greta v. State, 9 Texas Crim. App., 429-434; White v. State, 18 Texas Crim. App., 57; Irvine v. State, 20 Texas Crim. App., 12; Herron v. State, 20 Texas Crim. App., 296; Bond v. State, 23 Texas Crim. App., 180; Smith v. State, 24 Texas Crim. App., 290; Garza v. State, 38 Texas Crim. Rep., 317; Wheeler v. State, 34 Texas Crim. Rep., 350; Herr v. State, 52 Texas Crim. Rep., 53; Roch v. State, 52 Texas Crim. Rep., 48; Britain v. State, 52 Texas Crim. Rep., 169; Dulin v. State, 52 Texas Crim. Rep., 442; Freeman v. State, 52 Texas Crim. Rep., 500; White's Code Crim. Proc., sec. 301b; Fielding v. State, 48 Texas Crim. Rep., 334; Watson v. State, 50 Texas Crim. Rep., 171; Young v. State, 54 Texas Crim. Rep., 417; Noble v. State, 54 Texas Crim. Rep., 436.

*F. J. McCord*, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an

assault to murder under rather peculiar circumstances, his punishment being assessed at two years confinement in the penitentiary. His sister-in-law gave birth to a child at his, appellant's, residence on Sunday morning about 11 o'clock. Appellant was not at home at the time, but returned about 2 o'clock that day. The mother of the child testified that appellant was the father of the infant. On Monday evening an infant was found in a sack a few hundred yards from appellant's residence, lying on some bushes or twigs. The twigs had been cut and piled and the sack containing the infant had been placed on them and other twigs placed on top of this bundle. The child was first discovered by Simon Monroe, who called his father to keep watch over the child while he, Simon, went to call other parties. Simon's father was named Alfred Monroe. Alfred testifies that while keeping vigil appellant came down and inquired what he was doing. Being informed of the discovery of the infant appellant took it to his house. Appellant denied then and at all times that he carried the child to the point designated and further denied ever seeing the child until after it had been discovered by Monroe. He was aware that his sister-in-law had given birth to a child, but denied any knowledge of the fact that it was carried away from the residence. His theory of the case was that the child was carried by his wife to the point where the child was found. His wife did not testify on the trial. The evidence further shows that when appellant carried the child to the house his wife forbade his bringing it into the house. This is proved by the State's witness, Alfred Monroe. Appellant insisted on carrying the child into the house and having it taken care of. Finally the child was carried into the house. The officers were summoned, went to the house and talked with appellant about the matter, and in his conversation with the officers he denied any knowledge of the child being carried to the point where it was found. The State introduced some evidence to the effect that on the following Tuesday night appellant in a conversation admitted that he did carry the child to the point where it was found, but this was strenuously denied. The theory of the State was that the child was carried by appellant and hidden at the place where it was found and that by reason of the fact of its being only a few hours or a day old at most, that his purpose in carrying it to the point and placing it there without nourishment, was to bring about its death, and this being true that it was an assault with intent to commit murder. Appellant's theory of the case was, and which he introduced evidence to sustain, that he did not himself carry the child to the point where it was and had no knowledge of the fact, but that his wife was the party who did so.

A serious question and one which we think is fatal to the conviction is raised on the failure of the court to charge appellant's theory to wit: that he had no connection with placing the child where

it was found. The court, after charging the definition of assault and battery and the theory upon which a conviction could be predicated, instructed the jury if they believed the State's theory they would be justified in finding him guilty. The charge on accomplice's testimony, as well as the law of circumstantial evidence, was given. Appellant insisted in his motion for new trial that the court committed error in failing to present his theory of the case to the jury and that under his theory he would not be guilty; that if his wife took the baby in his absence, without his knowledge or guilty connection, and placed it where it was found, that he would not be responsible legally and under that state of case the jury should have been instructed to acquit. We think this contention is correct and that the error is intensified by the court's charge wherein the court instructed the jury that appellant would be guilty if he acted alone or with another or others in placing the child where it was. His theory of the case was that he had no connection with it either unaided by or in connection with others. As to how the child reached the point where it was found is a matter of speculation. The main fact pointing to appellant is found in the statement of one of the witnesses that he saw a track in the field near where the child was found which appeared to be a man's track, but the track was not measured nor compared with the track made by the shoes appellant wore. However, this was not very significant because it is shown and admitted that appellant had plowed in that part of the field not a great way from where the child was found. There is no evidence showing or tending to show the character of tracks, if any, made at the point where the child was found and, yet, the bushes and twigs were cut in sufficient quantities to form a sort of bed on which to lay the child. Whoever did the work evidently made tracks around where it was found. We are of opinion that this criticism of the court's charge, or failure to charge, has real and substantial merit and the charge should have been given. Appellant avails himself of this error in a proper way to have it considered.

There was exception reserved to a conversation that occurred between appellant and the justice of the peace and constable. As presented by the bill, we are of opinion that there was no error in admitting this. Appellant was not under arrest at the time, nor does the bill show that he considered himself under arrest. He was subsequently placed under arrest by order of the justice of the peace. These officers testify in this connection that if appellant had undertaken to leave that they would not have permitted it, but there was nothing said or done so far as the bill goes to show that indicated to him, appellant, that these officers intended to hold him. We are of opinion, therefore, that as the bill presents the matter there was no error shown.

The court's charge is also criticised because it fails to submit what

is contended is another theory of the case, to wit: if there was a want of specific intent to kill, then an inferior grade of assault should have been charged, or an acquittal. We are inclined to think this view is justified by the record. If the child was placed there by appellant, and not for the purpose of killing the child, but of hiding the shame of his sister-in-law and his connection with the paternity of the child until it could be carried away, and the purpose was not to kill, but to spirit it away so as to avoid the shame attached to the matter, he would not be guilty of an assault to murder. The actions, conduct and testimony of the appellant would suggest this theory to our minds. At least, if upon another trial the testimony should develop as it did upon the last trial, we think this theory of the case should be presented in the charge. The child, it may be stated, did not die, but lived and was carried home by the appellant, and at his instance and insistance his wife took it and subsequently the mother received it and took proper care of it. It seems from the testimony also that it has never been sick or suffered any and was in no way injured or hurt; the evidence showed no violence upon it of any character. It is sometimes a little difficult to fathom the reasons and purposes of parties connected with this sort of transaction, and under the circumstances contained in this record and in the submission of theories suggested by the evidence, all consideration looking to the presumption of innocence or the reasonable doubt of guilt should be given in charge. The law favors the accused to this extent upon all theories of law and fact.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*