## J. P. LUTTRELL v. THE STATE.

### No. 2206. Decided April 16, 1913.

### Rehearing denied May 28, 1913.

**1.—Assault to Murder—Challenge—Jury and Jury Law—Rule Stated.**

Unless a juror is legally objectionable and sits upon the case, prior rulings of the court in regard to the competency of the juror will not afford grounds for reversal, and where the record showed that no juror who served on the case was not a fair, impartial and legal juror, there was no error. Following Oates v. State, 67 Texas Crim. Rep., 488.

**2.—Same—Evidence—Conclusions of Witness—Bill of Exceptions.**

Upon trial of assault to murder, there was no error in permitting the prosecuting witness to testify that the statement he made to the defendant made him mad; besides, the bill of exceptions was defective. Following Harris v. State, 62 Texas Crim. Rep., 235, and other cases.

**3.—Same—Evidence—Leading Question.**

Where the bill of exception complaining of leading questions pointed out no error, there was no error. Following Carter v. State, 59 Texas Crim. Rep., 73.

**4.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions did not show what answers the witness would have given or what the testimony would have been which was excluded, there was nothing to review on appeal.

**5.—Same—Leading Questions—Bill of Exceptions.** ·

Where the bill of exceptions did not show that the question asked was a leading question and the testimony was admissible, there was no error.

**6.—Same—Evidence—Condition of Party Assaulted.**

Upon trial of assault to murder, there was no error in permitting the assaulted party to testify that he was cut by the defendant and to state his condition from the effects of the wounds inflicted.

**7.—Same—Evidence—Res Gestae.**

Upon trial of assault to murder, there was no error in admitting testimony that immediately after defendant had cut the party injured, the latter had to be held up and assisted to his room; besides, the bill of exceptions was defective.

**8.—Same—Evidence—Strength of Defendant.**

Where, upon trial of assault to murder, the defendant claimed that he could not use his arm on account of a fall from a horse, there was no error in permitting the State to show by defendant's evidence on a former trial, and other testimony, that this was not true, in the way he handled his arm and shoulder.

**9.—Same—Jury and Jury Law—Challenges.**

Upon trial of murder, there was no error in compelling the defendant to pass upon the jury which remained after having been asked on their voir dire as to their qualifications; besides, the bill of exceptions was defective.

**10.—Same—Evidence—Prior Difficulty—Defendant's Conduct.**

Upon trial of assault to murder, there was no error in admitting testimony as to the defendant's conduct towards the party assaulted just before the difficulty; besides, the bill of exceptions was defective.

**11.—Same—Change of Venue—Affidavits—Attorney and Client.**

Where the affidavit of defendant, as well as the supporting affidavits attached to the motion for change of venue, were sworn to before defendant's attorney, the same could not be considered on appeal. Following Maples v. State, 60 Texas Crim. Rep., 169, and other cases.

**12.—Same—Statement of Facts—Change of Venue—Filing.**

Where the statement of the evidence heard upon motion for change of venue was not filed in the court below until long after the adjournment thereof, the same could not be considered on appeal. Following Gibson v. State, 53 Texas Crim. Rep., 349, and other cases.

**13.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of assault to murder, the evidence sustained the conviction, and the court's charge correctly submitted the offense and also charged on aggravated assault, self-defense, and reasonable doubt, etc., there was no error.

**14.—Same—Charge of Court—Requested Charges—Self-defense.**

Where defendant's charge on self-defense was submitted to the jury, the defendant could not complain on this ground.

**15.—Same—Charge of Court—Deadly Weapon—Presumption—Article 717, Penal Code.**

Where, upon trial of assault to murder, the court charged and fully defined what was a deadly weapon and substantially submitted all the law comprehended and embraced in article 717, Penal Code, a complaint, without assigning any specification or reason, that the court failed to charge on said

article is untenable. Following Berg v. State, 64 Texas Crim. Rep., 612; Skidmore v. State, 43 Texas, 93, and other cases.

### 16.—Same—Deadly Weapon—Intent to Kill.

Where, upon trial of assault to murder, the evidence showed that the defendant used a pocket-knife like the one introduced in evidence, and showed that its use on the party injured showed an intent to kill and was used in such manner that it was a deadly weapon, there was no error. Following Hatton v. State, 31 Texas Crim. Rep., 586.

### 17.—Same—Charge of Court—Deadly Weapon—Malice—Self-defense.

Where, upon trial of assault to murder, the court in his charge correctly defined malice, deadly weapon, and serious bodily injury according to the evidence, and instructed the jury to find defendant guilty of said assault if not in his necessary self-defense, etc., and submitted defendant's charge on self-defense, a complaint to such charge that the law of self-defense was not properly guarded is untenable.

### 18.—Same—Charge of Court—Charge as a Whole—Words and Phrases.

Where, upon trial of assault to murder, the charge of the court, considered as a whole, submitted every issue raised by the evidence, including manslaughter, aggravated assault, and self-defense, the contention that the word, "deceased" was used instead of the party injured was hypercritical, and there was no error.

### 19.—Same—Charge of Court—Adequate Cause—Prior Difficulty.

Where, upon trial of assault to murder, the court properly defined adequate cause as applied to the facts and circumstances surrounding the case, there was no error in the court's failure to instruct the jury that, as a matter of law, the prior difficulty between the parties taken together with the final assault constituted adequate cause.

### 20.—Same—Charge of Court—Cooling Time.

Where, upon trial of assault to murder, the evidence raised the issue of cooling time, and the court charged thereon without eliminating the issue of self-defense and literally followed the testimony without charging on the weight of the evidence, there was no error.

### 21.—Same—Requested Charges.

Where all of defendant's special charges which were proper were refused because they were covered in the main charge, there was no error.

### 22.—Same—Argument of Counsel—Bill of Exceptions.

In the absence of a bill of exceptions to the remarks of the county attorney contained in one short sentence, there was no error.

### 23.—Same—Sufficiency of the Evidence.

Where, upon trial of assault to murder, the evidence sustained the conviction, there was no error.

### 24.—Same—Charge of Court—Malice—Form of Charge.

No particular form of charge is required; if the charge defines assault, and malice aforethought, and requires the jury to find beyond a reasonable doubt that the defendant made an assault on the alleged injured party with malice aforethought and with the intent to kill, it is ordinarily sufficient, and where the court complied with this rule on trial for assault to murder, there was no error.

Appeal from the District Court of Jack. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. W. Nicholson* and *W. E. Fitzgerald,* for appellant.—On question of the court's failure to charge the jury on article 717, Penal Code: Martinez v. State, 33 S. W. Rep., 970; Shaw v. State, 31 S. W. Rep., 361; Hightower v. State, 56 Texas Crim. Rep., 248, 119 S. W. Rep., 691; Davis v. State, 63 Texas Crim. Rep., 484, 141 S. W. Rep., 93.

On question of adequate cause: Hightower v. State, 56 Texas Crim. Rep., 248, 119 S. W. Rep., 691; Scott v. State, 49 Texas Crim. Rep., 386, 93 S. W. Rep., 112.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—This is the second appeal in this case. The other is reported in 65 Texas Crim. Rep., 102, 143 S. W. Rep., 628. This trial resulted in the conviction of appellant for assault with intent to kill, and the lowest penalty was assessed against him. The general features of the case are shown by the former report thereof. The case this time was tried in accordance with the former opinion, and the errors there pointed out were corrected and avoided. The case seems to have been more fully and better developed on this trial. The testimony, as shown by this record, in several particulars is quite different from that reported on the other trial. We will, therefore, state the leading features of the testimony as shown by this record on this trial.

The name of the assaulted party was clearly shown to be, as alleged in the indictment, Edward Oscar Williams. For some time before this offense was charged to have been committed appellant and Williams were good friends, near neighbors and were frequently together. They were both married men and had families. A few days before this difficulty, which occurred on December 21, 1910, both parties had been drinking considerably, appellant more than Williams, and appellant had been quite drunk. It seems they were both, more or less, drinking at the time of the difficulty. Williams had sold appellant some seed cotton, and also a few days before had picked cotton for appellant. Appellant owed him for this cotton and for picking cotton. On the morning of the difficulty they had together hitched up a wagon, using as a team one horse of each of them, and had carried this cotton to a little town a few miles from where they lived, and just after dinner appellant sold it in the seed to a gin man, in payment of which the gin man had given appellant a check for the full price. Appellant and Williams went together from the ginner to a merchant in the little town, and this merchant cashed the check, paying appellant the full amount thereof in money. Williams was with appellant at the time. As soon as appellant was paid the money he paid Williams for the cotton that he had bought from him, but did not pay him what he owed him for picking.

They left the store and went out in the town somewhere, or at least, went out of the store. Some little time after this Williams called appellant's attention to the fact that he had only paid him for the cotton but had not paid him for the picking, and owed him therefor. It seems that this amount was $1, though it is stated by some to have been $2. When Williams told appellant that he had not paid him what he owed him for the picking, appellant claimed that the merchant who cashed the check paid him at the time he cashed the check. Williams denied this. It seems that then both parties became irritated somewhat over this dispute. Appellant proposed to go back to the merchant and prove it by him that he, the merchant, had paid Williams what appellant owed him for the picking; that thereupon together they went back to the merchant. Appellant asked the merchant if he, the merchant, had not paid Williams what he, appellant, owed him for picking at the time he cashed the check. The merchant stated that he had not, but that he had paid all the money to appellant and that appellant then himself paid Williams whatever was paid. This seems to have been $16 and perhaps some cents. At any rate, both of the parties became somewhat more irritated at the turn of affairs. They then again left the store, still disputing about this payment. Williams went to the team, started hitching it up with the view of going home. Appellant didn't then want to go home, but instead went across the main street or road of the town some sixty or eighty yards from said store to a blacksmith shop, he says, to get more whisky. Williams then also went over to the blacksmith shop, if not in actual company with appellant, immediately following him. Other parties were along with one or the other of them also. When they reached the blacksmith shop the question of the payment for the picking again arose. At the time of the dispute at the store about the payment for the picking, there were several other persons present. One of these testified that appellant then remarked, " 'I God' or 'By God'—something like that, 'I will scrap him over it,' " that is, he would scrap Williams before he would pay him for the picking. When they reached the blacksmith shop the trouble was continued. Williams said to appellant, "I will just give you that dollar." Appellant says, "No, you won't. I don't want your money." Williams said, "Yes, you do. I will give you the dollar." Appellant said, "No, you won't. I won't have it." Williams said, "It looks very much like it, the way you are talking." Appellant then said, "You are a G— d— liar." Williams then hit him and they went to fighting. This remark, as stated by this court in the recent case of Nickerson v. State, not yet reported, was such "that any sane man knows well would provoke a difficulty if the party to whom it is addressed has any manhood about him." They fought around at this time until Williams got him down on the ground and was hitting him in the face. Appellant holloed to those who were present, several being present, asking them to please pull Williams off of him. Two of the bystanders asked Williams to get off of him and not beat him any more, which Williams voluntarily did.

He was not forced off of appellant, nor pulled off of him. As soon as appellant got up he began looking for something with which to strike Williams, and found and picked up a good big piece of plank three or four feet long and struck Williams therewith. Williams, in order to ward off the force of the blow of the plank, ran towards appellant so that the plank struck him on the shoulder about midway and broke. They began fighting again and fought around for some time until they again got upon the ground. Which threw the other is not made clear. Williams landed on top and began fighting appellant again, each doing what he could against the other. Appellant again called to the bystanders begging them to take him off. Williams asked him if he would get off of him, would he, appellant, quit and let him alone. Appellant expressly stated that he would do so. Thereupon Williams again got off of him and desisted from fighting him or beating him. As soon as appellant got up again he got out his knife to again attack Williams when the bystanders interfered, caught his hand and took the knife away from him. Appellant then proceeded again to hunt something with which to strike Williams. Williams in the meantime started away from him back towards the wagon. Appellant finally picked up a large rock and attempted to assault Williams with it. The bystanders again interfered and took the rock away from him. In the meantime Williams, with another friend, was leaving the blacksmith shop and had gotten some distance therefrom, nearly to the wagon. His back was towards the blacksmith shop and towards appellant. Appellant had two pocket-knives with him. The first one, with which he attempted to assault Williams and which was taken away from him, was a little pen-knife, belonging to his wife, which he had procured that morning before leaving home. But while he was at the store, after cashing the check by the merchant, he had borrowed another pocket-knife from the merchant and had that with him at the time this fight occurred. While Williams was going to the wagon, accompanied by one of his friends, appellant got out this borrowed pocket-knife, opened it and started after Williams again. Several parties saw him open and have the knife in his hand, and saw that he was pursuing Williams; they thereupon holloed to Williams that appellant was after him with a knife and to look out. Williams knew nothing of this until thus warned; when thus warned, appellant had gotten within a few steps of him and Williams turned facing appellant with the intention of protecting, and attempted to protect himself from the renewed assault by appellant upon him with the knife and perhaps struck at him for that purpose. Appellant, however, succeeded in avoiding his lick, if one was struck at him, immediately seized Williams around the neck with his left hand and arm and held him fast therewith while with the pocket-knife in his right inflicted two most serious wounds upon the body of Williams. Williams' right side was rather towards appellant when appellant had him grasped around the neck. Appellant stuck the knife in Williams' left side and cut a gash clear around towards the front of his body,

just-below his heart clear into the hollow. Then stabbed him again in his left breast just a little higher than the first stab and cut. The bystanders were trying at this time to prevent appellant from cutting Williams, and, at last, after he had stabbed him twice, succeeded in getting hold of his right arm and pulling him away from Williams, and tried to take the knife from him or make him give it up, which he refused to do after repeated demands by bystanders, and never did give it up to anybody. The doctor who was called in to attend Williams testified that the first stab and cut was in Williams' left side between the sixth and seventh ribs; that it commenced right by the side or back, around towards the backbone and came around towards the front or breastbone; that it was eight or nine inches in length, right near the diaphragm that separates the bowels from the heart and lungs, and right below the heart; that it was cut through between the ribs right into the cavity, and he could see Williams' heart and pulse through this wound; it did not touch the heart but was just below it. The other cut was just a little above that one, but only went through the flesh and was a few inches long. It did not go as deep and was not as long as the other. The wounds were very serious. Williams was confined to his bed and the doctor attended him many days, and up to the time of this trial, which commenced on March 11, 1912, Williams had not entirely recovered from the effect of his wounds. Immediately after this cutting and stabbing of Williams by appellant, appellant took his horse from the wagon, got on him and immediately left the town. He went a few miles and traded off this horse for a better and fled the country. He could not be found by the officers and was not arrested until several months afterwards, when he was found and arrested in one of the eastern counties of the State. Appellant was a much larger and stronger man than Williams. Williams then weighed 138 pounds and was 5 feet 9 inches tall; appellant weighing 185 pounds and was 6 feet tall.

Appellant testified, and had other witnesses corroborating him, that a few days before this difficulty while he was drunk he attempted to ride a wild horse and was thrown therefrom two or three times; that his left shoulder was injured by these falls and rendered his left arm somewhat useless. Williams testified that appellant's shoulder and arm were not injured by this fall, and the State also introduced several other witnesses strongly tending to show that appellant's arm and shoulder were not injured by such fall. Appellant also testified that one object, or his object, in following Williams from the blacksmith shop was that he thought Williams would hitch up the wagon, go off and leave him and make him walk home, and that he took out his knife, opened it and went towards Williams for the purpose of protecting himself if Williams attacked him again. The evidence all shows that appellant was incensed at Williams and mad from the time the dispute first arose about whether he had paid Williams for picking said cotton or not. The great preponderance of the evidence, and all of the circumstances

show that appellant was in the wrong and the aggressor from start to finish. The only time Williams could be claimed to be the aggressor was when he first struck appellant when appellant called him a G— d— liar. This was not an attack by Williams upon appellant, but, as stated above, necessarily called for a blow from Williams and provoked him. The evidence in this trial in no way shows that Williams ever struck and knocked appellant down, but it does show that in the fight Williams struck him in the face and made the blood come and the blows caused appellant pain.

·Appellant, in a very defective bill, complains that the court erred in refusing his challenge for cause of a juror. To take the bill as a whole it shows that the juror was a qualified juror and that appellant had no challenge for cause, but even if the juror was subject to challenge for cause, and the court was wrong in not sustaining it, yet the bill does not show that this juror or any other who was disqualified served on the jury, and it does not show that any juror who was not a fair and impartial juror served on the jury. This court in Oates v. State, 67 Texas Crim. Rep., 488, said: "The rule now seems to be well settled that unless a juror is legally objectionable, who sat upon the case, prior rulings of the court in regard to the competency of the jurors will not afford ground for reversal," citing a large number of cases so holding; and then says: "This rule has been so long settled it is deemed unnecessary to discuss it further."

The whole of another bill by appellant is as follows: "The prosecuting witness, Edward Oscar Williams, testified for the State. Said, in substance: On the day of the cutting the defendant sold his cotton and had a settlement, and the gin man wrote a check for it, and he went up to get the money, and he owed me $16 out of that, besides the cotton picking, and after Edmonson paid him, he turned around and paid me, and I mentioned this cotton picking to him and it made him mad. Defendant objected to the statement that 'it made him mad' as a conclusion that the witness should state what was said. Witness: I don't remember what he said. The court overruled the objections, and to such ruling and action of the court the defendant then and there excepted and now tenders this bill and asks that it be approved and made ·of the record in this case and it is done." Every other bill in this case is just as meager and clearly as deficient as this bill. Conger v. State, 63 Texas Crim. Rep., 312, and authorities there cited. This court, in the former opinion in this case, called attention to defective bills of exception presented on the other trial. Even if we could review this question the evidence was clearly admissible.· Powers v. State, 23 Texas Crim. App., 42; Harris v. State, 62 Texas Crim. Rep., 235; White's C. C. P., sec. 1093½, subdiv. 2, p. 704, and 3 Ency. Digest Crim. Cases, pp. 204-5.

. Another bill complaining of the asking of what is claimed to be a leading question, shows no error. Carter v. State, 59 Texas Crim. Rep., 73.

No error is shown in the next bill, complaining that the court sustained an exception by the State to the appellant's manner of asking the complaining witness some questions. The bill is entirely too defective to require us to review it. It does not show what answers the witness would have given, nor what the testimony would have been which was excluded.

The next bill does not show that the question asked was a leading question. The testimony was admissible and the bill in no way shows error.

The next bill complains that the witness who was assaulted and cut could not testify to his condition from the effects of the wounds inflicted upon him by appellant, in stating, "I can't straighten up good, it pulls that cut; growing together. Part of it pulled loose inside. The strifen is dropped. It is broke loose here right close to my heart." Clearly this evidence was admissible.

The next bill complains in the same imperfect way that one of the witnesses to the difficulty testified that immediately after appellant had cut Williams he saw Williams standing and that he had to help him; that he didn't pick him up and carry him, but he assisted him from the scene of the difficulty to the witness' house where he was carried. This was a part of the transaction and clearly admissible, even if we could consider appellant's bill.

It being a disputed point whether appellant's arm or shoulder had been so injured by him being thrown from a horse a few days before, as to render his arm at the time of the difficulty so that he could not use it, and he denying that the day before he had used an ax with his hands, broke open a salt barrel, got salt out of it and carried a part of it home on his shoulder, it was clearly admissible to prove these facts by Mrs. Williams, the mother of the injured party, for the purpose of impeaching appellant and neither of the two bills on this subject shows any error whatever. Also it was proper to prove appellant's evidence on a former trial which disputed his evidence on this on a material point which he denied.

We give another one of appellant's bills in full. It is: "On voir dire, thirty-six or more men were examined for jury service in this case. Challenges for cause were made and sustained until only twenty-four men remained and the court thereupon directed challenges to be made from said list of twenty-four men, to which the defendant objected and requested a full panel. The court overruled the objection and required counsel to challenge from said list of twenty-four men. Defendant excepting, and the challenges were made, the State striking six men from the list and the defendant striking eight, and the first twelve men remaining were empaneled to serve as the jury in this case; to all which the defendant then and there excepted and now tenders this bill and asks that it be approved and made of record in this case, and it is done." This bill requires no review by this court. Even if it did,

it presents no error whatever as shown by the case of Oates v. State, supra, and authorities therein cited.

Even if presented in such way that we could consider it, the only other bill of appellant, complaining that the assaulted party, Williams, testified that at the blacksmith shop appellant was rowing and cursing at the time and just before their first fight, shows no error. Said evidence was clearly admissible.

Appellant filed a motion in the court below for a change of venue. The affidavit of appellant therefor, as well as the supporting affidavits, was sworn to before his attorney. Under the uniform ruling of this court, this did not authorize or require the court to consider it, as has many times and uniformly been decided by this court. Maples v. State, 60 Texas Crim. Rep., 169; Patterson v. State, 63 Texas Crim. Rep., 297. However, the court did hear it and heard evidence thereon. The term at which this case was tried convened on March 4th and adjourned on March 16, 1912. A statement of the evidence so heard was not filed in the court below until April 26, 1912, long after the adjournment. It has been the uniform holding of this court that such statements can not be considered when filed after the adjournment of the court, with or without an order of the court authorizing it to be done. Art. 634, C. C. P.; Gibson v. State, 53 Texas Crim. Rep., 349; Adams v. State, 35 Texas Crim. Rep., 285; Wright v. State, 40 Texas Crim. Rep., 447; Cortez v. State, 43 Texas Crim. Rep., 375; Bink v. State, 50 Texas Crim. Rep., 445; Dobbs v. State, 51 Texas Crim. Rep., 113.

Appellant has many complaints in his motion for a new trial to various words, sentences and paragraphs of the court's charge. We have carefully considered all of these and none of them present any reversible error. The court gave a full, fair and complete charge on every issue raised in the case, and applied the law to the evidence adduced. He correctly defined an assault, an aggravated assault, malice, and submitted correctly the case to the jury on the question of assault with intent to kill, strictly in accordance with the law and the evidence. He then correctly told them what would constitute manslaughter. He gave appellant's special charge on self-defense, just as requested by appellant, submitting the question for a finding by the jury on an aggravated assault on every theory raised by the evidence, charging on cooling time and on reasonable doubt between the degrees of the offense, presumption of innocence and reasonable doubt.

One of appellant's complaints is that the court erred in submitting to the jury the question of an assault with intent to kill at all, claiming that the evidence did not justify it. We have carefully considered all of the evidence and clearly, in our opinion, the evidence did raise the question and the court properly submitted it and the evidence is amply sufficient to sustain the verdict so finding.

His complaint that the court erred in the main charge in not submitting self-defense presents no error, because, even if the court did

purposely or by oversight omit it, he gave appellant's charge on the subject just as asked by appellant.

The third ground of appellant's motion for new trial is: "The court erred in his charge to the jury in not giving in charge to the jury article 717 of the Penal Code," then states the substance of this article without assigning any reason or specification why this should have been given. This is entirely too general to present the matter to this court for review, as held uniformly by this court. Byrd v. State, 151 S. W. Rep., 1068, and cases therein cited; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Mansfield v. State, 62 Texas Crim. Rep., 631; Luster v. State, 63 Texas Crim. Rep., 541, and the various cases cited in the above decisions. However, we think the charge of the court in the various phases submitting the case, substantially and sufficiently comprehended and embraced the effect of this article of the Code.

The court charged and fully defined what was a deadly weapon, as has many times been approved by this court and the Supreme Court. Skidmore v. State, 43 Texas, 93; Kouns v. State, 3 Texas Crim. App., 13; McReynolds v. State, 4 Texas Crim. App., 327; Briggs v. State, 6 Texas Crim. App., 144; Wilson v. State, 15 Texas Crim. App., 150; Branch's Crim. Law, sec. 83, wherein he cites Hardy v. State, 36 Texas Crim. Rep., 400; Tollett v. State, 55 S. W. Rep., 335; Wilson v. State, 37 Texas Crim. Rep., 156.

The knife with which the injury in this case was inflicted was described generally as a small pocket-knife with a handle "something like" two and one-half inches long. While the identical knife with which the injury was inflicted was not produced, one which was shown to be exactly like it was produced, identified and introduced in evidence before the jury. They saw it and with the manner of its use, could as well tell, under the circumstances of its use, in the hands of a large, powerful man as appellant was shown to be, whether it was a deadly weapon, without any witness specifically stating that it was or was not a deadly weapon, and by the manner and extent of its use on a most vital part of the body appellant's intent to kill. Crutchfield v. State, 152 S. W. Rep., 1057-8; Hatton v. State, 31 Texas Crim. Rep., 586; Branch's Crim. Law, sec. 516, and cases cited by him.

The court fully and correctly defined malice, then submitted the case for a finding on this issue as follows: "If, from the evidence, you are satisfied beyond a reasonable doubt that the defendant, J. P. Luttrell, on or about the time charged in the indictment, in the County of Jack and State of Texas, on or about the 21st day of December, 1910, with a deadly weapon, or instrument reasonably calculated and likely to produce death, or serious bodily injury from the manner in which it was used and with malice aforethought, did assault the said Edward Oscar Williams with intent then and there to kill and murder him, by

the means charged in the indictment; and if you are further satisfied by the evidence and beyond a reasonable doubt that said assault (if any) was not made under the immediate influence of sudden passion, produced by an adequate cause (as the same is hereafter explained to you in these instructions), or not in his necessary self-defense as hereinafter charged upon, then you will find the defendant guilty of an 'assault with intent to murder,' and so say by your verdict." There was, therefore, no error on this question as complained by appellant in the sixth ground of his motion for new trial, claiming that there was no testimony showing that said instrument was a deadly weapon, or an instrument reasonably calculated and likely to produce death from the manner in which it was used; nor was there any error in this charge as further complained in this ground of his motion in that, instead, as stated by the court therein, "or not in his necessary self-defense as hereinafter charged," he should have given, "and not in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury." There is no material difference in this language. Especially as the court gave appellant's special charge on self-defense exactly as requested by him. Taking the charge as a whole, which must always be done, appellant's said complaints point out no error.

It is elementary that the whole charge of the court must be considered when complaints are made of any specific portion thereof, or a few words or a sentence therein. So that there was no error in the following paragraph of the court's charge: "If you believe from the evidence that the defendant is guilty of an assault, but have a reasonable doubt as to whether such assault was upon malice aforethought, with intent to murder (as herein explained to you), then you will acquit him of that offense and next consider whether he is guilty of an aggravated assault," for the court did not thereby eliminate from the consideration of the jury appellant's self-defense. As stated above, the court fully submitted appellant's self-defense in a special charge just as requested by appellant, and told them that if he committed this assault and battery in self-defense to acquit him. And, besides, in submitting to the jury the question of aggravated assault, he did so in accordance with the law as applied to the evidence in this case, and specifically therein told them they could not convict him, even of aggravated assault, if such assault was in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury. Again, in another paragraph of the charge he plainly told the jury that if they believed, beyond a reasonable doubt, appellant was guilty of either an assault with intent to kill, or an aggravated assault, and they had a reasonable doubt of which it was, they would give him the benefit of it and not find him guilty of a higher offense than aggravated assault. And further charged that the defendant is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt; and in case they had a rea-

sonable doubt as to his guilt to acquit him, and say by their verdict not guilty.

The court defined manslaughter as prescribed by the statute and specifically told them therein that an assault and battery causing pain or bloodshed was an adequate cause, but in so stating the statute, quoted it literally: "An assault and battery by the deceased, causing pain or bloodshed." In submitting this question to the jury, however, he charged: "If the defendant did assault and cut said Edward Oscar Williams with a knife, and if, just before he did so, the said Williams had made an assault and battery upon the person of the defendant, causing pain or bloodshed, and if thereby the mind of the defendant was rendered incapable of cool reflection, as hereinbefore explained, or if, in connection with said assault and battery (if any) upon the person of defendant, causing pain or bloodshed, together with all the facts and circumstances in the case (if any), the mind of the defendant was rendered incapable of cool reflection, and if, in this state of mind, he assaulted and cut the said Edward Oscar Williams, and if he was not justified in so doing, he would not be guilty of any higher offense than aggravated assault; or if you find and believe from the evidence that if the defendant had killed the said Edward Oscar Williams when he assaulted and cut him (if he did so assault and cut him) the killing would have been manslaughter as hereinbefore defined, the defendant would not be guilty of a higher offense than aggravated assault. In determining whether or not adequate cause existed, sufficient to render the mind of the defendant incapable of cool reflection, you will consider all the facts and circumstances in evidence in this case; and in this connection you are charged that any condition or circumstance capable of creating and which does create sudden passion, such as anger, rage, resentment, or terror, rendering the mind for the time being incapable of cool reflection, is adequate cause." So that the jury could not have been misled by the court in defining manslaughter, quoting the statute and using the word "deceased" where it was used.

Neither did the court err in not telling the jury as a matter of law, as claimed by appellant, that the fights or assault and battery at the blacksmith shop taken together with the assault and battery at the time appellant stabbed and cut Williams, as shown in law, constituted adequate cause, but the court properly submitted this question with all of the facts and circumstances to the jury for them to determine whether or not all these things were or not, adequate cause.

Appellant, in this and in the previous trial, claimed that the court should submit the question of cooling time. This court in the previous appeal in this case held that the court below erred in not charging on cooling time. The record in this case shows that in this trial appellant urged that this should be done and the court, in compliance therewith, did charge on cooling time. And on this point charged the jury: "If you believe from the evidence that the defendant did assault and cut

said Edward Oscar Williams, and if you further believe that a minute or two before, at the blacksmith shop, the said Edward Oscar Williams had made one or more assaults upon the person of the defendant that caused pain or bloodshed, you are charged that these facts are sufficient in law to reduce the offense (if any) from assault with intent to murder, to aggravated assault, and if you believe the mind of the defendant was thereby rendered incapable of cool reflection, and if you further believe that there was not sufficient time, from the encounter at the blacksmith shop until the cutting occurred (if it did occur) for the mind of the defendant to become cool and deliberate, or for such anger, rage, sudden resentment, or terror, to subside, and for reason to resume its sway, in such case the defendant would not be guilty of a higher offense than aggravated assault." As stated above, the court, having fully submitted appellant's self-defense in his charge just as requested by him, and it being necessary to look to the whole charge when a given paragraph is attacked, this charge on cooling time did not eliminate appellant's self-defense, as claimed by him in an attack on this charge, nor did the court, as claimed by him, place the time between the fights at the blacksmith shop and the assault, when appellant stabbed and cut Williams, at double the time as stated in the charge above quoted, "if you further believe that a minute or two before, at the blacksmith shop," etc. The charge of the court literally followed the testimony on this point. Nor did the court by this charge, in substance or effect, tell the jury, as a matter of law, that appellant was guilty of an assault with intent to kill.

All of appellant's special charges which were refused· when proper were fully and sufficiently covered by the main charge of the court.

There is no bill of·exception to the claimed argument of the county attorney and without this no error is shown by the court's refusal to give appellant's special charge complaining of one short sentence of the county attorney's argument. Even if he used this expression, there is no reversible error in his doing so.

The evidence was amply sufficient to sustain the verdict. The jury inflicted the lowest punishment prescribed by law. There is, therefore, nothing in appellant's contentions that the evidence was insufficient to sustain the verdict of the jury.

As said by Mr. Branch in his Criminal Law of Texas, section 518, page 340, of a charge in this character of offense: "No particular form of charge is required. If charge defines assault and malice aforethought, and requires the jury to find beyond a reasonable doubt that defendant made an assault on alleged injured party with malice aforethought and with the intent to kill, it is ordinarily sufficient. White v. State, 34 Texas Crim. Rep., 153; Farrar v. State, 29 Texas Crim. App., 250; Hooper v. State, 29 Texas Crim. App., 614; Riojos v. State, 55 S. W. Rep., 172; Williams v. State, 38 Texas Crim. Rep., 144; Henry v. State, 54 S. W. Rep., 952; Moseley v. State, 70 S. W. Rep., 546." All this

having been done, and the evidence amply sustaining the verdict of the jury, the case will be affirmed.