PARIS GIRTMAN v. THE STATE.

No. 2794.   Decided March 4, 1914.

Rehearing denied March 25, 1914.

**1.—Murder—Witness Under Rule—Discretion of Court.**

Where there was nothing in the record which indicated that the action of the court, before placing the State's witness under the rule, in allowing the district attorney to confer with the State's witnesses by taking them collectively into a room adjacent to the courtroom where each and all of them could hear the testimony of each other, which in any way injured the defendant, and that the contradiction of one another by the witnesses occurred as usual and they did not swear to the same thing, there was no error, under the discretion of the trial court.

**2.—Same—Evidence—Expert Opinion.**

Where a practicing physician had made an examination of the body of deceased the next morning after the killing and minutely testified as to the character of the wounds inflicted, there was no error in permitting him to testify that said wounds on the head of the deceased could have been made with a 45-caliber pistol used as a club; the State having shown that defendant had such pistol on the night of the killing and that there were still traces of blood, etc., thereon.

**3.—Same—Evidence—Res Gestae.**

Upon trial of murder and a conviction of manslaughter, there was no error in permitting the State to show that shortly before the killing the deceased called State's witness out and asked him to go down and take defendant's pistol away from him, etc., and that they were fixing to kill him, as this testimony was admissible as res gestae. Following Washington v. State, 19 Texas Crim. App., 521, and other cases.

**4.—Same—Evidence—Moral Turpitude.**

There was no error in permitting the State on cross-examination of the defendant to ask him whether he was not then under indictment for an assault with intent to murder.

**5.—Same—Officers of the Court—Practice in District Court.**

Upon trial of murder, there was no error in permitting the district attorney, sheriff, and deputy sheriff in holding a consultation in the presence of the jury while the defendant was testifying.

**6.—Same—Evidence—Confessions—Arrest.**

Upon trial of murder, there was no error in permitting in evidence the declarations of the defendant with reference to the killing to the sheriff, made before he was arrested.  Following Hilcher v. State, 60 Texas Crim. Rep., 180, and other cases.

**7.—Same—Evidence—Hearsay—Declarations of Third Party.**

The declarations between third parties was purely hearsay, and there was no error in not admitting them in evidence; besides, the bill of exceptions was defective.

**8.—Same—Charge of Court—Manslaughter—Aggravated Assault—Deadly Weapon.**

Where, upon trial of murder and a conviction of manslaughter, the court charged the jury on murder in the first and second degree, manslaughter and aggravated assault and defined the use of the instrument by which the fatal injury was inflicted, and if not a deadly weapon in the manner of its use, etc., the law presumed that death was not intended, and if so, to acquit defendant

of manslaughter, and properly applied the law to the facts in evidence, there was no error.

**9.—Same—Imputing Crime to Another—Charge of Court.**

. Where defendant complained that the court failed to charge the law of imputing crime to another, but the court in his charge required the jury to believe that defendant committed the homicide and no other before they could find him guilty, there was no error. Following Thurmond v. State, 27 Texas Crim. App., 422.

**10.—Same—Charge of Court—Aggravated Assault—Harmless Error.**

Where, upon trial of murder and a conviction of manslaughter, the evidence did not raise the issue of aggravated assault, but the court, nevertheless, charged thereon, the defendant could not complain, even if the charge was incorrect.

**11.—Same—Deadly Weapon—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence tended to show that the killing was done by defendant with his pistol, using the same as a club, and the court properly submitted a charge defining what was a deadly weapon, there was no reversible error. Following Luttrell v. State, 70 Texas Crim. Rep., 183, and other cases.

Appeal from the District Court of Austin. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Edmondson* and *Duncan & Duncan,* for appellant.—On question of imputing crime to another: Harrison v. State, 83 S. W. Rep., 699; Blocker v. State, 55 Texas Crim. Rep., 30, 114 S. W. Rep., 814; Jackson v. State, 67 S. W. Rep., 497; Johnson v. State, 88 S. W. Rep., 223; Jemison v. State, 66 S. W. Rep., 842; Gilder v. State, 61 Texas Crim. Rep., 16, 133 S. W. Rep., 883.

On question of court's charge on deadly weapon, etc.: Griffin v. State, 50 S. W. Rep., 366; Johnson v. State, 60 S. W. Rep., 48; Posey v. State, 78 S. W. Rep., 689.

On question of arrest: Nolen v. State, 9 Texas Crim. App., 419; Patrick v. State, 74 S. W. Rep., 550.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, PRESIDING JUDGE.—From a conviction for manslaughter on a trial for murder appellant has appealed.

The record shows, by appellant's first bill of exceptions, that prior to. the announcement of ready the district attorney requested the court for time to confer with the witnesses and arrange the order of testimony. Whereupon, the court advised him that he would be given the necessary time after the selection of the jury; that after the jury was selected and before they were sworn to try the case, or the indictment read, and before appellant had pleaded, the court permitted the district attorney to

confer with the witnesses by taking them collectively into a room adjacent to the court-room, and where each and all of them could hear the testimony of each; that after this and before any of the witnesses were placed on the stand all of the witnesses for both sides were sworn and placed under the rule. The appellant objected to this action of the court in permitting the district attorney to thus confer with these witnesses. On what ground is not stated. The bill shows no error. This court in a uniform line of decisions has all the time held that such matters must be left to the sound discretion of the trial judge, and unless the bill shows that this discretion has been abused to the injury of appellant this court will not reverse. There is nothing in this whole record which indicates that this action of the court and the district attorney in any way injured appellant. The contradiction of one another by the witnesses is more than usual and there is nothing that tends to show that by the district attorney having them together and going over the evidence in any way caused them to swear to the same thing. See cases cited in section 767, White's Ann. C. C. P.

The deceased, "old man Allen Reed," as he is called by the witnesses, is shown to have been killed on the night of February 15, 1913. Dr. Steck, an active practicing physician, made an examination of his body the next morning. His testimony shows, without contradiction, that his head and face was beaten in a most cruel and brutal manner. The doctor showed that there was an irregular cut wound back of the right ear of deceased of the soft tissue about a half inch long; that here the skull was fractured and he passed a probe downwards toward the mastoid process between the two plates of the bone about one and a half inches; that above the right ear was a lineal wound of the scalp an inch and a half long from front backwards—extending up and down this way (illustrating) ; that just back of the top of the head was a scalp wound describing about a half of a circle and in the center of this was a small part of skin intact. This wound looked as though it had been made by the end of a hollow instrument; that there were several jagged cuts on the nose,—one down the center one and a half inches long; that there were several on the right side of the nose, one of which was about an inch and a half long; that the nasal bones were broken, the inner side of both orbits broken, as well as both the malar bones; and the superior maxillary bone or upper jaw bone was broken transversely about the lower part of the nasal fossa. Several of the upper teeth on the right side were broken loose en masse—that is, there were three or four teeth that hung together in one piece—the bone and whole piece was loose,—broken. That there was a long somewhat circular lacerated wound through the right brow, and a small cut wound on the left upper lid. The lobe of the left ear was cut through. There was a lacerated wound on the left side of the top of the head, which looked as if made with a blunt instrument. This was more in the nature of being broken than cut; it was two and a half inches long from the front backward and extended through the scalp. There was a scalp wound just below this one, an

inch and a half long, running vertically.  There were several abrasions on the left arm which looked like a puncture—looked as if they were struck at an angle.  There was an irregular shaped cut on the flexor side of his left wrist, an abrasion or skinned place on the left leg about the middle thereof,—three inches long, just to the outside of the shin bone, an abrasion just below the left knee cap, also a skin wound.  That these wounds were fatal and that after those on the head were inflicted the deceased could not have gone anywhere but would have dropped; that the wounds on the head could have been made with a 45-caliber pistol used as a club, by holding it at either end.

The court did not err in permitting Dr. Steck, as shown above, to testify that said wounds on the deceased's head could have been made with a 45-caliber pistol used as a club.  The State produced, identified and introduced, in evidence a 45-caliber pistol which was shown and admitted to have been appellant's pistol and had by him that night at the time deceased was killed,—with blood still on it, though after the killing he is shown to have attempted to wash all the blood off.  The pistol was also shown to have been sprung, evidently caused by being used as a club on the head of deceased and also that the handle thereof was broken and shattered at the time.

The evidence is quite conflicting.  Many witnesses, negroes, who were at the scene of the killing, as well as appellant, testified.  Notwithstanding the conflicting testimony, from the whole of it, it is clear that a sort of general fight between the deceased and others began at appellant's house where deceased lived and that at first the deceased, with a tin, or small pen-knife, cut, slightly on the arm, one of the negro women who was engaged in the fight with him; that thereupon, others became engaged in the fight, or were attempting to prevent it, when some three of the parties either fell or were thrown out of the door of the house, the fight it seems beginning in the house; they were separated or separated themselves.  One Fax Williams, who was engaged in the fight, or in attempting to separate the parties, one or the other, after getting up or being taken up from the ground started to the wood pile to procure an ax with which it seems he intended to kill the deceased or defend the women with whom deceased was engaged in the fight.  Thereupon the deceased started to the house of the landlord, Mr. Diemer, who lived just 200 yards away, announcing that he was going after a gun to protect himself or kill said Williams.  Williams was intercepted with the ax and it was taken away from him and placed under the bed of appellant's wife where it remained and was not in any way used in the fight or otherwise in connection therewith.  Deceased immediately proceeded to Mr. Diemer's house.  This was about midnight.  He called Mr. Diemer out, asked him to go down and take appellant's pistol away from him and make Fax Williams leave the place, that they were fixing to kill him.  He repeated this request at the time three or four times, and he then told Diemer that if he, Diemer, wouldn't protect him to loan him his gun and he would protect himself.

It seems Mr. Diemer did not take the matter seriously and did not respond to the deceased's request. The deceased thereupon immediately went back to appellant's house, where he lived, and the fight was continued or renewed. In the meantime, while deceased had gone to Mr. Diemer's, Fax Williams left the scene and went to his home a mile and a half distant and remained and did not know of the killing until the next day. Diemer did not know of it until the next day. Diemer further testified that in four, six or eight minutes,—"a very short while after he (deceased) left" he heard a pistol shot at appellant's house. The testimony otherwise clearly shows that appellant fired this shot at the deceased but missed him. The testimony also otherwise shows, in effect, that all the other negroes at appellant's house took refuge therein, leaving only the deceased and appellant out in the yard; that when deceased returned from Diemer's and the fight was continued, or renewed, he went into his room and procured a razor and was either attempting to fight or protecting himself therewith, and that he at that time cut another one of the negro women on the arm and she fled the scene taking refuge in the house. It was just after this that appellant fired the shot at the deceased and from all the evidence it is evident and certain that the appellant, after missing him with this shot, called to deceased to drop the razor. The deceased replied that he had already done so and holding up his hands, exhibiting them and exclaiming that he had already dropped the razor and did not then have it. The razor was found the next morning in the yard near where the body of the deceased was removed from. It was then that this brutal and cruel beating and killing of the deceased by appellant, with his pistol used as a club, occurred.

Appellant objected to the testimony of Diemer as to what deceased said to him,—in substance, to come up there and take appellant's pistol away from him and make Fax Williams leave; that they were fixing to kill him, claiming that said testimony was not admissible as res gestae. The court correctly held that it was admissible as res gestae. The testimony shows that it was a part of the fight between the parties and that the whole fight was but a continuous one. The authorities are uniform and numerous in holding such testimony was admissible as res gestae. We deem it unnecessary to discuss them. We merely cite some of them. Washington v. State, 19 Texas Crim. App., 521; Wiseman v. State, 32 Texas Crim. Rep., 454; Koller v. State, 36 Texas Crim. Rep., 496; Means v. State, 10 Texas Crim. App., 16; Cox v. State, 8 Texas Crim. App., 254; Johnson v. State, 30 Texas Crim. App., 419; Tooney v. State, 8 Texas Crim. App., 452; Elmore v. State, 78 S. W. Rep., 520; Stanley v. State, 44 S. W. Rep., 519; Ency. of Ev., p. 615; Renn v. State, 64 Texas Crim. Rep., 639, 143 S. W. Rep., 167.

Appellant testified. On cross-examination, for the purpose of affecting his credibility, the court correctly permitted the district attorney to ask him if he was not then under indictment for a felony—for an assault with intent to murder. See sec. 868, Branch's Crim. Law, where a large number of cases are cited.

Appellant complains that while he was on the stand testifying the district attorney and sheriff, and deputy sheriff, were holding consultations in the presence of the jury. Appellant's objection to this was that unless the sheriff or deputy were employed in the case it prejudiced and influenced the jury against him in using the sheriff's influence in that way. This shows no error whatever.

The next morning after the deceased was killed the sheriff was informed thereof and went out to appellant's for the purpose of making an investigation and did so. Among others, he found appellant there and talked with him about the killing, trying to find out the facts. The sheriff, testifying, told what appellant said to him on that occasion. His testimony shows clearly that at the time appellant then talked to the sheriff, no arrest had been made and that appellant had not been arrested. How long afterwards before he was arrested is not disclosed. Clearly what he then told the sheriff was admissible against him, his objections being that his statements were made after he was arrested. The facts show that the statements he made were made before he was arrested as shown above. Hilcher v. State, 60 Texas Crim. Rep., 180; Hart v. State, 15 Texas Crim. App., 202; Cordes v. State, 54 Texas Crim. Rep., 204; Martin v. State, 57 Texas Crim. Rep., 264, 122 S. W. Rep., 558; Elsworth v. State, 54 Texas Crim. Rep., 38; Grant v. State, 56 Texas Crim. Rep., 411; Hiles v. State, recently decided but not yet reported.

Appellant, by another bill, complains that the court would not permit him to ask the witness Palm, sheriff, further questions as to what Fax Williams told him. The State objected because what was sought by the questions was hearsay. The court sustained the State's objection on that ground. The bill does not disclose what answer the witness would have made and does not show in any way that the court's ruling was wrong.

The court charged the jury on murder in the first and second degree, manslaughter and aggravated assault. Appellant complained of the court's charge on manslaughter and aggravated assault. The charge on manslaughter clearly is in accordance with the statute on the subject. It is unnecessary to copy or further state it. In submitting manslaughter for a finding, he told the jury in effect, that if they believed beyond a reasonable doubt that the appellant and no other person, with a deadly weapon, in a sudden passion arising from an adequate cause, did on the date alleged, and as alleged, beat, wound and bruise the deceased and did inflict the fatal injury and thereby kill deceased, to find him guilty of manslaughter and assess his punishment. In this connection the court gave a correct charge on circumstantial evidence. Appellant claims that the court should have given the converse of the proposition he did submit to the effect that if the instrument or weapon by which the fatal injury was inflicted was not a deadly weapon, or the manner of its use was not calculated to produce death, then the law presumes that death was not intended, and if they so find to acquit appellant of manslaughter. The court did charge the jury correctly what was a deadly

weapon. It also correctly told the jury that the instrument or means
by which a homicide is committed are to be taken into consideration in
charging the intent of the party offending. If the instrument be one
not likely to produce death it is not to be presumed that death was de-
signed, unless, from the manner in which it was used, such intention
evidently appears. The court also charged that the burden of proof was
upon the State and the presumption of innocence prescribed by the stat-
ute. Also the reasonable doubt between the different degrees of homi-
cide and manslaughter and "if you find from the evidence, beyond a
reasonable doubt, that the defendant is guilty of some grade of offense
less than murder, but you have a reasonable doubt as to whether the
offense, if any, is manslaughter, or aggravated assault, then you must give
the defendant the benefit of the doubt and in such case if you find him
guilty it could be of a higher grade than aggravated assault." The
charge of the court was correct. Appellant requested no special charge
on the subject and made no objection to it at the time it was given. If
it did not submit the question as fully as appellant now claims, it was
his duty to request at the time additional instructions submitting such
matter for a finding. His claim that there was testimony which might
have tended to show that Fax Williams, and not appellant, killed the de-
ceased, and that this should have been submitted to the jury by the
court's charge, is fully met by the fact that the court in the charge, not
only expressly required the jury to believe that appellant committed the
homicide, but that no other person did so. Thurmond v. State, 27
Texas Crim. App., 346.

Our statute, Penal Code, article 1148, prescribes: "If any injury be
inflicted in a cruel manner, though with an instrument not likely under
ordinary circumstances to produce death, the killing will be manslaugh-
ter or murder, according to the facts of the case." Again: "Where
the circumstances attending a homicide show an evil or cruel disposition,
or that it was the design of the person offending to kill, he is deemed
guilty of murder or manslaughter, according to the other facts of the
case, though the instrument or means used may not in their nature be
such as to produce death ordinarily." P. C., art. 1150. Upon a care-
ful and thorough study of the facts of this case, we are of the opinion
that aggravated assault was not in the case and should not have been
submitted. But the court did submit it, and of course, that was to the
appellant's advantage and not to his disadvantage. So that appellant's
complaint of the court's charge on aggravated assault, even if correct,
would not present reversible error. But his complaints of the charge on
this point are met by the charge itself, taken as a whole. Among his
complaints is one that the court did not submit. Penal Code, article
1147. An inspection of the charge shows that the court did give this
article precisely in his charge to the jury. And, as shown above, he told
the jury correctly what was a deadly weapon. Appellant's pistol with
which the killing was done, used as a club, was identified, admitted to
be his, and introduced before the jury. They had it, saw it, and ex-

amined it and under the circumstances they clearly could tell whether or not, from the manner of its use, that it was a deadly weapon and unquestionably the cruel manner of its use showed appellant's intention to kill, as he did. While denying the killing, he did not pretend to testify that he did not intend to kill. Luttrell v. State, 70 Texas Crim. Rep., 183, 157 S. W. Rep., 157; Crutchfield v. State, 162 S. W. Rep., 1067; Hatton v. State, 31 Texas Crim. Rep., 586; Branch's Crim. Law, sec. 516, and cases cited by him.

The judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 25, 1914.—Reporter.]