Carney BAKER, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–036–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 24, 1983.

Eugene Coffey, Corpus Christi, for appellant.

Wm. B. Mobley, Jr., Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

The offense involved in this case is involuntary manslaughter. The assessed punishment is ten years in the penitentiary. The appellant seeks reversal of his conviction through two grounds of error which complain of inadmissible evidence at trial.

A brief summary of the facts of the case is helpful. Appellant was indicted in connection with the shooting death of his common-law wife, Janet Garcia, in an incident which occurred in the bedroom of their home sometime around 4:00 a.m. on the morning of September 30, 1978. The appellant's defense at trial was that of accident. According to a written statement which appellant gave to police following his arrest, these facts were set out: He stated that when he went to bed on the morning of the shooting, he placed a .22 caliber revolver near his bed because he was afraid he might be attacked by a man with whom he had fought earlier in the evening. He stated that he fully woke up when he heard the sound of the gun going off: "As if all in one motion, I heard the gun go off, I saw a figure fall to the floor and I realized I had the gun in my right hand. I got up from the bed and turned the light on and saw Janet lying on the floor."

After the appellant took the stand in his own defense and confirmed the story contained in his written statement, the State offered the testimony of Sgt. Lazo and Officer Hernandez of the Corpus Christi Police Department as to prior oral statements which were made by the appellant after his arrest which were inconsistent with the written statement. Sgt. Lazo testified that the appellant had previously told him that he had fallen asleep with the gun in his hand, that he heard a noise in the front room of his house, that he saw a silhouette and fired. Officer Hernandez testified that the appellant told him he had laid the gun beside the bed and when he heard the noise from the living room, he turned around and fired at the door.

Appellant's first ground of error, which comports with his objection at trial, is simply that Sgt. Lazo's testimony concerning the oral statements was inadmissible under Article 38.22, Texas Code of Criminal Procedure (the version applicable to this case is as amended in 1977). 1977 Tex.Gen.Laws, ch. 348, § 2, at 935-37. Appellant's objection was too general to inform the trial court of his complaint and was therefore not sufficient to present error to this Court. In addition, there is another reason to overrule this ground of error. Appellant argues in his brief that the statement testified to by Sgt. Lazo does not meet any of the requirements of Section 3 of Article 38.22.

The State, on the other hand, impliedly at trial and expressly in its brief, counters that the statements were admissible under Section 5 of the same article. Section 5 provides, "Nothing in this article precludes the admission of a ... voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, ...."

██ Although the Court of Criminal Appeals has recently held that, under the version of Article 38.22 that is applicable to this case, Section 3 controls over Section 5. (*Alfaro v. State,* 638 S.W.2d 891, 900 [Tex. Cr.App.1982] ). The admission of such testimony was not reversible error in this case. Virtually the same evidence was admitted without objection in the form of testimony of Officer Hernandez. When there is testimony admitted over objection that may be erroneous, and the same testimony or testimony to the same effect is admitted thereafter without objection, the objection in the first instance is waived. See *Boles v. State,* 598 S.W.2d 274 (Tex.Cr.App.1980); *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978). Because the facts sought to be proved by the objectionable testimony were established by other unobjected-to testimony, we conclude that the error, if any, in the admission of Officer Lazos' testimony was harmless. Ground of error one is overruled.

Also admitted into evidence over the objection of the appellant was the testimony of an aunt of the decedent concerning telephone conversations that she had with the decedent approximately 35 and 50 minutes before her death. The aunt, Angie Gutierrez, was allowed to testify to statements made by the deceased on the grounds that they were res gestae. Appellant's objection is that the timing of the statements precludes their admissibility as res gestae.

██ Time is an important, but not the controlling, factor in determining the admissibility of statements offered as res gestae. Spontaneity is a key factor and each case must be tested on its own facts. *Fisk v. State,* 432 S.W.2d 912, 914–15 (Tex.Cr. App.1968).

██ Gutierrez testified that the victim called her twice on the morning of her death, once at approximately 3:15 a.m. and again at about 3:30 a.m. According to Gutierrez, the first conversation was a very brief one in which the victim asked the whereabouts of her aunt, Amy Garza. The victim was told that she was in San Antonio for the weekend. In the second conversation, Gutierrez reported that the decedent called to inform her that she was going to San Antonio to see her aunt Amy that very night. She asked for and received directions to the exact address in San Antonio where her aunt was staying. Then the decedent apparently changed her mind, and the following testimony describes the remainder of the conversation:

"A: (by Gutierrez) I told her that, well, to answer what she said first, this is what I told her because she told me that it was too late. All of a sudden she changed her conversation and she said, 'Never mind, it's too late now,' and I said, 'No, it's not too late.'

Q: (by prosecutor) Do you know what she was talking about?

A: No, she didn't tell me.

Q: But all of a sudden then she started talking about going to San Antonio, and she just changed?

A: She changed her tone and said, 'Aunt Angie, it's too late. Please be sure and tell Aunt Amy she tried to help me.'

Q: You never did know what she was talking about?

A: No.

Q: What did you say?

A: I said, 'No, it's not too late,' and she said, 'Yes, it's too late,' and she whispered that.

Q: Was there anymore of that conversation?

A: No, she just repeated it a few times and then she hung up."

The State argues that the statements attributed to the deceased constituted a cry for help and part of the res gestae of the offense. However, the facts of this cause do not fit with those in which the classic "outcries for help" were admitted. See:

e.g. *Dickson v. State*, 134 Tex.Cr.R. 22, 113 S.W.2d 528 (Tex.Cr.App.1938); *Walton v. State*, 116 Tex.Cr.R. 20, 34 S.W.2d 598 (Tex. Cr.App.1931); *Girtman v. State*, 73 Tex. Cr.R. 158, 164 S.W. 1008 (Tex.Cr.App.1914). The statements were not made at a time approximate to or contemporaneous with the event which caused the speaker's death. There was nothing in either conversation testified to by Gutierrez to even indicate that the decedent was in fear of her safety or under threat from anyone. We also do not think that the statements in question here were made contemporaneously with and explanatory of an act of the decedent which was material to an issue in the case, so as to be admissible under the so-called "verbal act doctrine." See: e.g. *Trostle v. State*, 588 S.W.2d 925 (Tex.Cr.App.1979); *Whitmore v. State*, 570 S.W.2d 889 (Tex.Cr. App.1977); *Porter v. State*, 86 Tex.Cr.R. 23, 215 S.W. 201 (Tex.Cr.App.1919). Assuming that the statements in question were not properly admissible as res gestae, we cannot and do not hold that their admission was reversible error.

The appellant has presented no argument or authority to show that he has been harmed in any way by their admission. If the statements were in any way material to any issue in the case, it would be that of the guilty mind (mens rea) of the accused. It is certainly apparent from the record that the prosecutor desired to draw an inference from the decedent's statements that the appellant intended to kill her and that she was aware of his intention. The verdict of involuntary manslaughter makes it clear to us that the jury did not choose to draw such an inference. A judgment will not be reversed for erroneous admission of evidence that did not injure the defendant. There is no harm unless there is a reasonable probability that the evidence complained of might have contributed to the conviction. *Bass v. State*, 622 S.W.2d 101, 104 (Tex.Cr.App.1981).

After reviewing the entire record, we are convinced that any error in the admission of the statements was harmless. Appellant's second ground of error is overruled. The judgment of the trial court is affirmed.